## WILLIAM V. M. REILLY, Respondent, v. MICHAEL J. CULLEN, Appellant.

### St. Louis Court of Appeals, March 31, 1903.

1. **Mortgage:** CONTRACT OF DEFEASANCE: POWER OF MORT-GAGEE: PRIVATE SALE: COMMISSIONS. The contract of defeasance provided that either the mortgagor or the mortgagee could sell the property at private sale within sixty days, but thereafter a sale could only take place by foreclosure, and as the sale was made by the defendant (or mortgagee) without authority, he should not have any remuneration by way of commissions charged for effecting the sale.

2. ———: PRIVATE SALE BY MORTGAGEE, UNAUTHORIZED: LIABLE FOR ALL RECEIVED. In making the private sale, the defendant (or mortgagee) should not be regarded as a "malefactor," but he should be held to the exercise of the utmost good faith and be required to account for all that he received for the property, and if that was less than the market value, he should be required to account to plaintiff (or mortgagor) for its full market value irrespective of what he may have sold it for.

3. **Suit for an Accounting:** EVIDENCE: MARKET VALUE. Evidence in a suit for an accounting examined as to whether the property sold for the market value, and *held* to show that it did.

4. ———: MARKET VALUE, DEFINITION OF. The market value of real estate, as applied to the sale of realty by a mortgagee, is the fair value of the property between one who wants to buy and one who wants to sell, irrespective of peculiar circumstances rendering the property of peculiar value to either the purchaser or vendor.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Douglas,* Judge.

REVERSED AND REMANDED.

#### STATEMENT.

In February, 1897, plaintiff was the owner of improved property—lot 40, block 1860—in the city of St. Louis, upon which he had given a mortgage to the St.

Louis Trust Company to secure a note of six thousand dollars made to said company. He had defaulted in the payment of interest due on the note on acccount of which default the trust company was about to foreclose the mortgage. He applied to defendant, to whom he was indebted, to pay the trust company the overdue interest and prevent a foreclosure sale of the property. On February 18th, the following arrangement was entered into by and between plaintiff and defendant. Plaintiff made and delivered to defendant a deed conveying the fee-simple title of the lot to defendant. At the same time they executed the following contract of defeasance, to-wit:

"St. Louis, February 18, 1897.

"This agreement between W. V. M. Reilly and M. J. Cullen, witnesseth: That William V. M. Reilly has this day conveyed by deed to said Cullen his property on Evans avenue, on the following conditions: Mr. Cullen pays the interest on loan of $6,000 on said property, to prevent sale under foreclosure and to secure to said Cullen money owed to him by said Reilly. Mr. Cullen agrees to allow said Reilly to sell said property, or to sell it himself, and on payment to him of what money Reilly owes Cullen, and what money he pays out on said property, together with reasonable compensation for his trouble, said Cullen will make deed to said property to Reilly, or to whoever he may designate. This agreement to last for sixty days from this date.

"WILLIAM V. M. REILLY,
"M. J. CULLEN."

"It is agreed under contract on reverse side to leave to the judgment of John J. Lane and D. J. Hayden, the decision as to the acceptance of any trade or sale of said property.

"WILLIAM V. M. REILLY,
"M. J. CULLEN."

Defendant paid the trust company the overdue interest.

Plaintiff was unable to find a purchaser for the property within sixty days from the date of the making of the contract. After the sixty days had expired, defendant employed John J. Lane, a real estate agent, to find a purchaser for the property and asked him to make extraordinary effort to sell it. Lane testified that he did so and on May 17, 1897, sold the property to Victor Diesing for seven thousand six hundred dollars. Diesing assumed the payment of the mortgage to the St. Louis Trust Company on which was due at the time, the principal (six thousand dollars), and interest (one hundred and twenty dollars), and paid the balance of the purchase money (one thousand four hundred and eighty dollars), to defendant. Defendant had paid seven hundred and eighty-eight dollars and one cent, overdue interest, to the trust company and back taxes on the property. He paid Lane a commission of two hundred dollars for selling the property. Plaintiff owed him a judgment of four hundred and thirty-one dollars and twenty cents recovered October 5, 1895, with eight per cent interest thereon, which plaintiff agreed should be paid out of the proceeds of the sale of the property. The interest on the judgment was sixty-six dollars and eighteen cents on May 17, 1897. The cost of obtaining the judgment was five dollars and thirty-four cents. Defendant allowed Diesing twenty-two dollars and fifty cents out of the purchase money on account of the occupation of a part of the premises for one month after its sale by the plaintiff. Defendant testified that he received twelve or thirteen dollars net rent out of the property while in his possession.

To restate the account, he received: .

On the sale....................$1,480
On rent......................    13
                              ———
Total............. ....... ..............$1,493

He paid:

| | | |
|---|---|---|
| Interest and taxes | $788 | 01 |
| Commission to Lane | 200 | 00 |
| His own judgment | 431 | 20 |
| Interest on same | 66 | 18 |
| Costs | 5 | 34 |
| To Diesing | 22 | 50 |
| Total | $1,513 | 23 |
| Balance due to defendant | 20 | 23 |

The plaintiff sued in equity alleging that the deed to defendant, though absolute on its face, was in fact an equitable mortgage; that the lot with the improvements was of the value of twelve thousand dollars; that defendant violated the trust by illegally selling the property at private sale and at a sacrifice.

Defendant in his answer alleged that he was entitled to sell the property according to the terms of the agreement of February 18, 1897, to reimburse himself for what he had paid out for plaintiff at his instance and request, and for the payment of his judgment against plaintiff; that he acted in good faith and sold the property for its full market value and accounted for the proceeds as hereinbefore stated.

This appeal is from a judgment rendered on a second trial of the cause. From the judgment on the first trial there was an appeal to the Supreme Court, where it was held that the deed and cotemporaneous defeasances should be read together, and when so read they constituted only a mortgage or security for the indebtedness named. Reilly v. Cullen, 159 Mo. 322. On the second trial, from which this appeal is prosecuted, the decision of the Supreme Court, in respect to the transaction of February 18, 1897, was accepted by both parties and the deed recognized and treated as an equitable mortgage.

The only material questions of difference between the parties on the trial were in respect to the market

value of the property and the right of defendant to pay Lane's commission for effecting a private sale of the property.

The learned circuit judge, after hearing the evidence, made the following finding of facts and rendered the following judgment:

"Now at this day come again the parties to the above-entitled cause, in person and by their respective attorneys, and submit this cause to the court upon the pleadings and proof adduced, and the court, after hearing and considering the evidence, finds the issues herein joined for the plaintiff; the court further finds that the warranty deed made, executed and delivered by the plaintiff to the defendant, dated February 18, 1897, conveying to defendant the real estate therein described, was by the parties thereto intended to be and is in effect and purpose a mortgage on said real estate to secure the payment to the said defendant of a certain debt then due and owing by said plaintiff to the defendant, and also the repayment to defendant of other moneys to be by defendant herein thereafter paid out for and on account of said plaintiff in and about preventing the sale of the real property in said deed described under and by virtue of the terms of a deed of trust on said property theretofore executed by plaintiff and at that time held by the St. Louis Trust Company of St. Louis, securing payment of plaintiff's note for $6,000 and interest thereon.

"And the court further finds that, after said conveyance by plaintiff to defendant, defendant did not foreclose plaintiff's rights as mortgagor by any suit for that purpose, and that defendant, on May 17, 1897, unlawfully sold and conveyed said real estate so conveyed by said plaintiff to him as aforesaid to one Victor Diesing, for the consideration of the sum of $1,600 cash, and the assumption by and agreement of said Diesing to assume the payment of and to pay off and ex-

tinguish said debt which was secured by said deed of trust so held by the said St. Louis Trust Company.

"And the court further finds that the fair and reasonable market value of the real property in said deeds described at the time it was sold and conveyed by the defendant to said Diesing was........$9,000 00

That the incumbrance thereon at that time was......... ..........:$6,000 00

Four months' interest thereon..    120 00    6,120 00

Leaving surplus due plaintiff............ $2,880 00

That defendant received rents after said deed to him and up to the time of his conveyance to said Diesing amounting to....... ............. ...........    11 91

Total chargeable against defendant.......    2,891 91

That defendant paid out and is entitled to credit as follows:

Interest and expense to St. Louis Trust Co., ........ ..............$788 01

Commission to Lane on sale to Diesing .... ........ ...........  ....    40 00

Rent due from plaintiff one month..    22 50

Defendant's judgment against plaintiff ......... ......... ..    431 20

Interest thereon to May 1, 1897, at eight per cent per annum............    5 34    1,287 05

Balance due from defendant to plaintiff at date of institution of suit............. $1,604 86

"Wherefore the court does now consider, adjudge and decree that plaintiff do have and recover of defendant the sum of $2,015.72, being the said sum of $1,604.86, with interest thereon at the rate of six per cent per annum from the date of the institution of this

suit, September 18, 1897, and that plaintiff also have and recover his costs herein expended, and that execution issue for said sum of $2,015.72 and costs.''

*Stewart, Cunningham & Eliot* for appellant.

(1)    Section 4356, Revised Statutes 1899 (Acts of 1885, page 209), is aimed at the proceedings necessary to affect the title to real estate.    It is not pertinent to a case where the contractual relations of the parties alone govern their equities.    (2)    Where the act of a mortgagee, though technically wrongful, accomplishes a result to which he is entitled, and to accomplish which a court of equity would extend its aid to him, he is not to be regarded as a malefactor, or chargeable with any unusual measure of damages for his act.    If the plaintiff in such a case is not injured, there is no equity in providing a remedy against the mortgagee.    Wilson v. Drumite, 24 Mo. 304; Turner v. Johnson, 95 l. c. 450. (3)    As the defendant was entitled, in any event, to a sale of the property without delay, and at the courthouse door, the measure of value for which he can be called to account is no greater than the selling value of the property.    If the property has either a higher speculative value, or one which can be obtained only by holding it for its profits, these measures are unreasonable.    The value to be considered is the market value, which is the price at which the property is salable.    Market value is what it would bring when sold as such property is ordinarily sold in the community where it is situated.    Everett v. Railroad, 59 Iowa 243; Lawrence v. Boston, 119 Mass. 126; 14 Am. and Eng. Ency. of Law, p. 467.

*H. A. Loevy* for respondent.

(1)    In selling, the utmost good faith must be observed so as to insure greatest benefit to mortgagor. Cassaday v. Wallace, 102 Mo. 575; Stoffel v.

Schroeder, 52 Mo. 147. (2) The correct measure of damage is reasonable , market value at time of conversion with legal interest. Wilson v. Drumrite, 24 Mo. 304; Turner v. Johnson, 95 Mo. 450; Jones v. Bank, 67 Mo. 111; Perry on Trusts, sec. 647. (3) The court fixed the value of the property in accordance with Railroad v. Knapp-Stout, 160 Mo. 410; Kansas City v. Bacon, 157 Mo. 474-5. (4) Lane's commission was properly fixed at two and one-half per cent of value of equity ($1,600), as he was only selling the equity. Becker v. Silsby, 123 Mo. 108; Young v. Evans Co., 158 Mo. 410; Barnes v. Storer, 21 Hun 109, 115.

BLAND, P. J.—1. The contract of defeasance vested in defendant or plaintiff the power to sell the property at any time within sixty days at private sale subject to the approval of Lane and Hayden. After the expiration of the sixty days, defendant's power to make a private sale of the property terminated. The sale, therefore, made by him was without authority and we can not see upon what principle of law or equity he is entitled to charge the plaintiff, or the proceeds of plaintiff's property, with his expense and outlay in bringing about the wrongful sale, and we think that he should not have credit for the two hundred dollars paid to Lane as commission for effecting the sale.

2. Under the terms of the agreement the defendant was entitled to a sale of the lot, but only so after a judgment of foreclosure and order of sale by a court of competent jurisdiction (sec. 4342, R. S. 1899); however, the private sale made by defendant was effectual to convey the legal title to Diesing unaffected by the plaintiff's equity of redemption for the reason that Diesing was unaware of the existence of that equity when he made the purchase. In making the private sale, the defendant, to use the language of the Supreme Court in respect to a sale made under similar conditions in the case of Wilson v. Drumrite, 24 Mo. 304, should not

be regarded as a "malefactor." But in equity and good conscience he should be held to the exercise of the utmost good faith and be required to account for all that he received for the property and if he sold it for less than its market value he should unquestionably be required to account to the plaintiff for its full market value, irrespective of what he may have sold it for. Wilson v. Drumrite, supra; Turner v. Johnson, 95 Mo. l. c. 450.

The market value of the property at the time of the sale is the principal question in controversy.

Plaintiff called as witnesses six real estate men, namely, Menkins, Fisher, Haydell, Madden, Cornet and Crone, all of whom were more or less acquainted with the property and informed on the value of real estate in said city. Two of them, Menkins and Haydell, valued the property at ten thousand dollars. Two others, Fisher and Cornet, valued it at nine thousand dollars. Madden valued it at twelve thousand dollars and Crone at from ten to twelve thousand dollars.

Defendant called four real estate men, Wade, Bowman, Lane and Scramm, who were acquainted with the property and who were experienced real estate men, in the city of St. Louis, and acquainted with the values of real property in said city. Three of these witnesses placed the market value of the property at the time of the sale at seven thousand five hundred dollars and one at seven thousand six hundred dollars.

Madden, one of the plaintiff's witnesses, was indirectly interested in the result of the suit.

Menkins testified that he had been entrusted with the sale of the property by plaintiff prior to February, 1897, but that he had been unable to sell or exchange it at a valuation exceeding seven thousand five hundred dollars and did not know whether he could now sell it for that much or not; that there is a vast difference

between the value a man puts on property to hold it and what it can be sold for in cash.

Fisher testified, on cross-examination, that the property would not have brought more than seven thousand five hundred or seven thousand six hundred dollars at forced sale in October.

Haydell said on cross-examination that he doubted his ability to get eight thousand dollars for it; that from seven thousand five hundred to eight thousand dollars was what he thought he might get for it because of the small demand for real estate. The witness stated that it was a difficult matter to determine the value of a piece of real estate from an expert point of view as distinguished from an actual sale. "Men of long experience in the real estate business will differ very considerably on such questions quite often;" that it is the general tendency among real estate men to keep the values up. "We claim where property will show a larger return on a given amount of money than stocks or bonds, or any other form of investment, it is worth that given amount." The witness stated that he had no actual experience with the property in respect of its rents or expenses.

Cornet on cross-examination testified that he placed the value of the property at what, in a reasonable time, during the course of three or four years, it could be sold for; that at a trustee's sale, at the time in question, it might not have brought more than $7,500; that he had no actual experience with the property in respect of rents or expenses, and that the property was in considerably better condition at the present time than it was when he examined it in 1897.

Cook, the district assessor of the city of St. Louis, testified that he made assessment of the property in question in 1897, which assessment was $6,900; that he did not know the market value of the property; that the present rental from the property was about $76 a month; that computing from this as a basis he deemed

the property worth $7,500; that the present assessment of the property was $6,100.

Crone on cross-examination testified that he did not mean that the property could have been sold in the market for $10,000, but that he based an intention to lend money upon it, upon the revenue the property produced; that in his judgment the value of the real estate should be estimated upon its income.

Festus J. Wade, one of the witnesses for defendant, testified that he was president of the Mercantile Trust Company and was familiar with the property, and that in his judgment it was worth $7,500; that there had been no change in value since May, 1897; that he had large experience in real estate matters through many years in the city of St. Louis, and that property of the kind to which this property belonged, paying $900 a year in gross rents, would not be worth more than $7,500; that if he owned the property himself at the present time he would sell it for $7,500.

Bowman, another witness for defendant, testified that he knew the property, and that he regarded it as worth $7,500; that there was not much difference in value of the property between May, 1897, and the present time; that it might have been worth $500 more in May, 1897, because of subsequent depreciation.

The witness also testified that he had sold the property for the owner of it in November, 1899, for the sum of $6,350; that the sale was made after efforts on his part to find a purchaser at its value; that he advertised the property and had written other agents, and finally found a purchaser at $6,350, which was the best price he could get.

John J. Lane, a witness for defendant, testified that he had sold the property as agent for Mr. Cullen, defendant; that he had made unusual efforts to find a purchaser, and that the amount obtained for it ($7,600) was as much or more than it was worth. He also testified that there had been over $1,400 spent upon the

property since the sale to Diesing, and that the property at the date of the trial was not worth over $7,500. The witness also testified that previous to the time of making the sale at $7,600, he had frequent conversations with D. J. Hayden, who considered that he had done very well in making the sale at that price.

Frank W. Scramm, a witness for defendant, testified in substance that in his judgment the property was worth in May, 1897, between $7,500 and $8,000; that he had the practical management of the property in the collection of rents and payment of expenses.

It seems to us that plaintiff's witnesses, in the main, estimated the value of the property at what they thought it ought to sell for and not what it could have been sold for—estimated its value as an investment and not its market value.

In St. L., etc. R. R. Co. v. Knapp-Stout & Co. Company, 160 Mo. 1. c. 410, the Supreme Court, in a condemnation proceeding, approved an instruction defining market value as follows:

"By the market value of property is not meant what could be obtained for it at forced sale, or at a sudden demand for the sale thereof, but the market value referred to is when the man owning the property is willing, but not obliged to sell it, and the person to whom it is offered is willing or desires to purchase the same, but is not obliged to do so."

It would be difficult to apply this definition of market value to the facts in this case, for the reason the evidence shows that plaintiff, or some one for him, was obliged to sell the property or suffer a foreclosure of the mortgage held by the St. Louis Trust Company, or a foreclosure of its equitable mortgage in the near future.

The definition of market value given in Lawrence v. City of Boston, 119 Mass. 126, in substance as follows: The market value is the fair value of the property as between one who wants to buy and one who wants to

sell, irrespective of peculiar circumstances rendering the property of peculiar value to either the purchaser or vendor—fits the circumstances of the case in hand and furnishes a guide by which the market value of the property may be justly estimated. Everett v. Railroad, 59 Iowa 243. The plaintiff was anxious to sell. He had, prior to February 18, 1897, placed the property in the hands of a real estate agent for sale with authority to sell it at any price exceeding seven thousand five hundred dollars. This agent had made ineffectual efforts both to sell and exchange the property and we think it is fairly inferable from the evidence that had plaintiff, at any time within the sixty days he was authorized by the agreement of February 18, 1897, to sell the property, been offered seven thousand six hundred dollars for the property, he would have gladly accepted the offer.

The evidence in the case, when carefully weighed and considered, convinces us that defendant sold the property at its full market value on May 17, 1897, and that he is accountable to plaintiff only for what remains in his hands after paying out all the charges he was authorized to pay under his agreement with plaintiff. He should be charged with the cash received on the sale and for rent, to-wit, one thousand four hundred and ninety-three dollars. He is entitled to the following credits: For payment of interest and taxes seven hundred and eighty-eight dollars and one cent; his own judgment of four hundred and thirty-one dollars and twenty cents and interest thereon, sixty-six dollars and thirty-four cents; costs of suit, five dollars and thirty-four cents; total, thirteen hundred and thirteen dollars and thirty-nine cents, leaving a balance due plaintiff of one hundred and seventy-nine dollars and sixty-one cents, to which should be added interest at the rate of six per cent per annum from May 17, 1897.

The judgment is therefore reversed and the cause

remanded with directions that the circuit court set aside its former judgment and enter judgment for plaintiff for one hundred and seventy-nine dollars and sixty-one cents, with interest thereon from May 17, 1897. All concur.