H. L. BOWEN AND ANOTHER v. BANKERS LIFE COMPANY.[1]

December 18, 1931.

No. 28,626.

[1]Reported in 239 N. W. 774.

**36**

*Catherwood, Hughes & Alderson,* for appellant.
*Drake & Day,* for respondents.

STONE, J.

Plaintiffs, husband and wife, had a verdict for damages for an alleged premature and wrongful foreclosure of a real estate mortgage. Its motion for judgment or new trial was denied, and defendant appeals from the judgment.

The mortgage covered a fractional half section in Mower county. Defendant as mortgagee foreclosed and bid in at the sale February 16, 1929, for $22,315.38, the full amount of the debt and expense of foreclosure. Plaintiffs sue for breach of a contract which they claim to have made with defendant September 26, 1928, whereby defendant bound itself not to foreclose for 18 months. The verdict awarded plaintiffs two items of damage, $1,682.57 for the excess of the value of the farm over what it brought at the foreclosure sale, and $939, its rental value for one year from the date of sale.

The contract alleged by plaintiffs was negotiated for defendant by one Linden, a field representative. It was labeled a "grant of possession." Plaintiffs claim to have paid defendant as part of the transaction $126 cash, to have assigned to defendant a $222 note of the then tenant, together with the lease, and also to have delivered certain grain. That is a summary of plaintiffs' position as gathered from the complaint and argument. The written agreement, as signed by plaintiff H. L. Bowen, concludes with a statement that nothing therein should prevent defendant "from starting foreclosure proceedings under the mortgage." That provision produced at the trial a collateral issue, plaintiffs claiming that the insertion of it was a fraud on them; that plaintiff H. L. Bowen, who signed the instrument, did not read it, could not read it at the

time because of his inability to do so without the use of his glasses, which he did not have with him; that defendant's representative, Linden, pretended to read the instrument to him and fraudulently omitted this important reservation. The testimony of H. L. Bowen supports that claim. It is confirmed somewhat by correspondence which immediately followed defendant's procurement of the "grant of possession." These letters indicate that Mr. Bowen had no conception of the nature and effect of the instrument he had signed. The verdict must be taken as one for damages for the breach of the contract, as plaintiffs claim it was entered into orally between Mr. Bowen and Mr. Linden.

■ We consider first certain assignments of error which challenge a ruling permitting plaintiffs so to amend their complaint as to charge fraud in the reduction to writing of the contract. No such claim was made in the original complaint, but the contract was declared upon as plaintiffs claim it actually was. No copy or duplicate was made, and defendant retained possession of the original until the time of trial. Then plaintiffs claimed to have discovered for the first time the provision preserving defendant's right to foreclose. The permission given plaintiffs to amend was within the discretion of the trial judge, particularly as he gave defendant the option of a continuance. Plainly enough, plaintiffs were surprised by the true nature of the contract. They had given real value for it without getting anything worth while in return, unless there was some forbearance on defendant's part of its right to foreclose.

■ Under the contract defendant was entitled to the rents and profits. There is no claim that it has not given plaintiffs credit for all it received up to the time of the sale. In that situation, our next inquiry is as to the correct measure of plaintiffs' damage. There is certainly no rule which would give them the benefit of full market value as of the day of sale, plus rents and profits for the year following. They cannot elect to treat the sale as absolute (they do so by this action) and also ask their vendee to yield them the fruits of possession for any period following the sale.

In Minnesota the mortgagor of real estate retains both legal title, and right to possession. His right of possession remains for one year after foreclosure sale. Technically, until sale he has an equity of redemption from the mortgage, and after sale a right to redeem from the sale. In the former case he redeems, if at all, from the mortgagee or his assigns, and in the latter from the purchaser or his assigns. But for present purposes the distinction between the equity of redemption before sale and the statutory right of redemption after sale (2 Jones, Mortgages [8 ed.] § 1335) is immaterial. The decisive thing is that the land was not lost to plaintiffs February 16, 1929, when it was sold under the foreclosure. Even if that sale was wrongful, it was not the cause of the loss of the farm by plaintiffs. Their right to redeem remained. The loss of title was due proximately to their failure to redeem, which was in no way prevented or hindered by defendant. Yet the verdict assesses damages against defendant precisely as though its act had been the sole and proximate cause of the whole loss. On no other theory can the allowance as an item of damage of excess of reasonable value over the bid at the foreclosure sale be sustained.

Cited to us is the statement:

"Where a mortgagee makes an unauthorized sale, he is liable in damages for the value of the land at the time of sale, less the amount of the mortgage debt. This is the measure of damages where the mortgage is foreclosed in violation of an agreement to extend the time of payment, and not the net profits of the property from the date of sale to the time when the debt and security would have matured." 41 C. J. p. 1036.

The cases cited as authority are Ullman v. Devereux, 46 Tex. Civ. App. 459, 102 S. W. 1163; Reilly v. Cullen, 101 Mo. App. 32, 74 S. W. 370; Missouri R. E. Syndicate v. Sims, 121 Mo. App. 156, 98 S. W. 783. In Ullman v. Devereux, 46 Tex. Civ. App. 459, 102 S. W. 1163, a deed had been given as a mortgage. The grantee did not foreclose but sold privately and wrongfully. Reilly v. Cullen, 101 Mo. App. 32, 74 S. W. 370, also involved a deed given as a mortgage. Again, the sale, without foreclosure, was private and un-

authorized and deprived plaintiff of his equity of redemption. Of course the measure of his damage was the value of the property in excess of the debt. In Missouri R. E. Syndicate v. Sims, 121 Mo. App. 156, 166, 98 S. W. 783, 786, there was a wrongful foreclosure. Plaintiff "might have had the trustee's sale set aside and thus restored its equity of redemption." But it elected rather to sue for damages, the measure of which was held the value of the "equity in the property." That was because, as the court said, "plaintiff was deprived of this equity by the premature and wrongful sale under the deed of trust and nothing short of the money value of that of which it was deprived by the wrongful action of defendant could afford it adequate compensation." (In Missouri there is no redemption after sale except under a "power of sale mortgage or trust deed." 3 Jones, Mortgages [8 ed.] § 1721.)

The mere reading of these cases shows that the rule deduced from them, above quoted, can apply only where the wrongful sale itself *deprives* a mortgagor of his equity of redemption. Under our law, in its application to the sale now involved, the sale alone did not deprive plaintiffs of their right to redeem. Its only effect was to set running the one-year limitation and fix the sum required to redeem. Incidentally, plaintiffs could have stayed that proceeding by timely injunction, or, even after the sale, could have had it set aside. They elected to affirm the sale and treat it as valid. Hence, so far as loss of title is concerned, plaintiffs seem to be met by the rule that to recover damages at law it is necessary to show that "the land went to an innocent holder so that the plaintiff's interest in it was lost." In the absence of that factor, a plaintiff has "no cause of action at law." Larson v. Larson, 133 Minn. 452, 453, 158 N. W. 707, and cases cited.

It follows that in so far as the verdict included as damages anything on account of the reasonable value of the land, it was wrong. But if plaintiffs' theory of the contract and defendant's breach is sustained, as it was by the verdict, they are entitled to the benefit of the rents and profits during the period of 18 months from September 26, 1928. We do not discuss the assignments of error

which challenge incompetency of certain witnesses for plaintiffs on this issue of rental values, except to say that we do not find that the learned trial judge abused his discretion in admitting any such evidence. The issue as to the rental value for the year following the foreclosure sale has been once fully tried, the damages for that item having been assessed by the jury at $939. If the period covered by the special issue submitted to the jury had been the 18 months following September 26, 1928, instead of the 12 following February 16, 1929, the result must have been about the same. Plaintiffs have received credit for all the profits of possession to the latter date. So, if they will consent to the reduction of the verdict to $939, there is no good reason for another trial.

Accordingly, we consider that the judgment should be reversed, but with the privilege to plaintiffs to consent, within 15 days of the going down of the remittitur, to the entry of one in their favor against defendant for $939, with lawful interest. If they consent to such a judgment the case should be finally disposed of accordingly; otherwise there must be a new trial of all the issues.

So ordered.

