JOHN HANCOCK MUT. LIFE INS. CO.
v. HOWARD et al.'
No. 1619.

Court of Civil Appeals of Texas. Waco.
June 13, 1935.

Rehearing Denied Sept. 19, 1935.

Geo. A. Titterington, of Dallas, and Tirey & Tirey, of Waco, for appellant.

W. V. Dunnam, of Waco, for appellees.

ALEXANDER, Justice.

On August 1, 1927, Charles F. Howard and Mrs. Mary C. Howard, a single woman, executed and delivered to John Hancock Mutual Life Insurance Company a deed of trust on 73 acres of land in McLennan county to secure the payment of a loan in the sum of $2,200 due in 1937. In 1931, Charles F. Howard conveyed his interest in the land to Miss Lula Howard. In June, 1933, the insurance company, in accordance with the terms of the note, declared its loan due for the failure to pay the annual interest, caused notices to be posted and the property sold under the powers given in the deed of trust. At the sale, the insurance company purchased the property for the sum of $1,000, crediting the amount of its bid on said note.

In August, 1933, Mrs. Mary C. Howard and her daughter, Miss Lula Howard,

brought this suit against the insurance company and W. A. Roberts, the substitute trustee who sold the property under the deed of trust, in trespass to try title to recover the land in question. In the alternative, the plaintiffs alleged that shortly prior to June 1, 1933, defendant's agent conferred with them about said indebtedness against the land and suggested to them that they apply to one of the government agents for a loan to pay off said indebtedness; that said agent promised them that no action would be taken toward a foreclosure under the powers given in the deed of trust until plaintiffs had had a reasonable time in which to apply for and secure such loan, nor until plaintiffs had received further notice from him; that in violation of said promise the insurance company caused notices of sale to be posted on June 8, 1933, and, wholly without the knowledge of plaintiffs, caused the property to be sold by the trustee on July 4, 1933, and bought in by the insurance company. Plaintiffs alleged that they believed and relied on said representations and that but for same they would have either raised the money with which to pay said indebtedness or would have had some one present at the sale to buy the property for them. They alleged that by reason of these facts said sale was void and the defendants were estopped to assert the validity thereof. They alleged that the land was worth $100 per acre at the time of such sale and prayed for the difference between the amount of the insurance company's debt and the value of the land. Further pleading in the alternative, they prayed that in the event they should not be allowed to recover damages as above set out, that said trustee's sale be declared null and void. The defendants, in addition to a general denial and a plea of not guilty, filed a cross-action setting up the indebtedness due the insurance company and prayed for judgment therefor, with foreclosure of its lien on the land in the event the trustee's sale should be set aside.

The case was submitted to a jury on special issues, and in response thereto the jury found that on or about the first of June, 1933, the insurance company's agent represented to the plaintiffs that the insurance company would not proceed to foreclose its lien on the land for a reasonable time thereafter in order that the plaintiffs might procure a loan with which to pay off and discharge the debt owing by plaintiffs to said defendant company, and that said agent would see and confer with the plaintiffs at some future time before any action would be taken by the defendant company in respect to foreclosure of its lien on plaintiffs' land; that said representations were made for the purpose of keeping the plaintiffs from attending the trustee's sale; that plaintiffs relied on said representations; that the insurance company did not postpone the sale of the land for a reasonable time as promised; that at the time of said sale the plaintiffs were in position to have protected their interest in the land by payment of the amount due by them, and that at that time said land had a reasonable market value of $80 per acre. Based upon said verdict, the trial court declared said trustee's sale void and refused the insurance company the right to foreclose its lien on the land and entered judgment for the plaintiffs against the insurance company for the sum of $3,003.38, that being the difference between the value of the land as found by the jury and the indebtedness owing to the insurance company. Judgment was entered in favor of the defendant W. A. Roberts. The insurance company appealed.

The appellant has filed an original and a supplemental brief containing in all 375 pages in which it presents 85 assignments of error or grounds for reversal of the case. Necessarily we cannot discuss all of these assignments. We will discuss only such of them as present the most serious questions.

The first contention is that the evidence is insufficient to support the jury's findings that the insurance company's agent promised plaintiffs that no foreclosure would be had under the deed of trust until plaintiffs had had a reasonable time in which to secure a government loan, nor until they received further notice from him. It is also contended that the evidence is insufficient to support the finding that at the time of the sale the plaintiffs were in position to have protected their interest in the land by paying the amount due by them. We have reviewed the record very carefully, and while the evidence is very weak, we have concluded that it is sufficient to support the verdict. In this connection the evidence shows without dispute that the plaintiffs had not paid any interest on the loan, nor any taxes on the property, for three years. In the latter part of May, 1933, the insurance company sent its agent to see plaintiffs about the

loan and instructed him to avert a foreclosure if possible. Mrs. Howard testified that said agent told her that she could secure a government loan on the property for at least $3,500, and that he would assist her in getting such a loan. She further testified that the agent told her that he would see her again before he did anything with reference to a foreclosure under the deed of trust. Mrs. Howard sent said agent to see her daughter. Miss Howard testified that said agent came to see her and made substantially the same statements and promises to her. Both of the plaintiffs testified that said agent did not come back to see them, and that they had no actual knowledge of the sale until after the trustee's deed had been recorded. Miss Howard testified further that if she had known that the trustee intended to sell the property, she could have secured a temporary loan from a friend and thereby avoided the sale. The insurance company introduced much testimony to the contrary. However, considering the evidence most favorable to the findings of the jury, as we are required to do, we are of the opinion that the evidence in this respect is sufficient to support the verdict.

Appellant further contends that there was no consideration for the agreement to postpone sale of the property under the deed of trust until plaintiffs were further notified. It may be conceded that since there was no agreement to postpone the payment of the debt to any definite future date, the agreement was without consideration and was not binding as a contract. Austin Real Estate & Abstract Co. v. Bahn, 87 Tex. 582, 29 S. W. 646, 30 S. W. 430. Plaintiffs' rights, however, are not based on contract. They are based on an alleged temporary waiver by the insurance company of its right to sell the property under the deed of trust. Such a waiver requires no consideration. 24 Tex. Jur. 883; Equitable Life Assur. Soc. v. Ellis, 105 Tex. 526, 147 S. W. 1152, 1157, 152 S. W. 625. Moreover, if, as alleged by plaintiffs, the insurance company, in order to buy in the property at less than its value, promised plaintiffs that no such sale would be made for a reasonable time, and if by such method the plaintiffs were lulled into sleep and induced not to protect their interest and the insurance company was thereby enabled to acquire title to the property for less than its value, the insurance company would be estopped to take advantage of its wrong and to insist upon the validity of the sale. We overrule this assignment.

The insurance company contends that, notwithstanding the illegality of the trustee's sale, the court should not have allowed plaintiffs to recover the difference between the amount of the mortgage debt and the value of the land, but instead should have merely set the sale aside and allowed the insurance company to establish its debt and to foreclose its lien, as contended for in its cross-action. In our opinion this assignment must be sustained. There are authorities which hold that where a mortgagee makes an unauthorized sale, he is liable in damages for the value of the land at the time of the sale, less the value of the mortgage debt. 41 C. J. 1036. We do not doubt the correctness of this rule where the title to the property has, by means of the illegal sale, passed into the hands of a third party, and particularly if the third party purchased in good faith for value and without notice. Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799; Ullman v. Devereux, 46 Tex. Civ. App. 459, 102 S. W. 1163; Id. (Tex. Civ. App.) 93 S. W. 472; Reilly v. Cullen, 101 Mo. App. 32, 74 S. W. 370; Stansberry v. McDowell (Mo. App.) 186 S. W. 757, par. 5; Rogers v. Barnes, 169 Mass. 179, 47 N. E. 602, 38 L. R. A. 145. But we do not think such rule should be applied where the rights of third parties have not intervened, and especially where, as in this case, the mortgagor's possession has not been disturbed. Those cases in which it is held that the mortgagor is entitled to recover the difference between the value of the land and the amount of the debt base such holding on the theory that the mortgagee has committed a wrong somewhat similar to the conversion of personal property. See Boothe v. Feist, supra. Conversion of personal property is a tort growing out of the unlawful exercise of control over the possession, and not merely the title, to the property. Hence, in order to constitute a conversion of personal property there must be an unlawful interference with the possession of the property. 65 C. J. 12. For a like reason it would appear that an unlawful interference with the mortgagor's possession of the land would be indispensable in order to entitle the mortgagor to recover the difference between the value of the land and the amount of the mortgage debt on the

theory that the action is one in the nature of conversion. Here the mortgagors' tenant was in possession of the land at the time of the sale under the deed of trust. He remained in possession continuously thereafter and was paying rent to the mortgagors at the time of the trial. The only evidence of the exercise of authority over the property by the mortgagee is found in the fact that the insurance company caused the trustee's deed to be recorded and exhibited the property to a prospective purchaser. This did not amount to a material interference with the mortgagors' dominion over the property, and consequently did not invoke the application of the rule above referred to.

 Moreover, we are of the opinion that the rule applied in the lower court was not the most accurate available method for adjusting the differences between the parties to the suit. The law undertakes to award just compensation—no more and no less—for the injuries sustained; and, in awarding damages for an injury, that rule should be followed which will best afford just compensation for the pecuniary loss sustained and place the injured party as nearly as possible in the same position that he would have occupied had the injury not been inflicted. 17 C. J. 846. In the case at bar, if the trustee's deed is set aside and the mortgagors' title restored, the mortgagors will be fully compensated for all injuries sustained; and if the mortgagee is permitted to establish its debt and to foreclose its lien, it will receive no more and no less than that to which it is justly entitled. On the other hand, the uncertainty encountered in applying the rule contended for by the appellees is well illustrated by the facts in this case. Here plaintiffs alleged that the land was worth $100 per acre and offered one expert witness to sustain their contention. He testified that the land was worth from $90 to $100 per acre. The insurance company offered three expert witnesses who testified that the land was worth from $25 to $40 per acre. The jury did not exactly agree with either of these experts, but from this testimony estimated the land to be worth $80 per acre. The plaintiffs evidently in good faith believed that the land was worth $100 per acre, else they would not have so alleged nor offered proof to sustain their contention; yet if the jury's estimate is to be accepted and the rule applied as contended for by plaintiffs, they will be compelled to accept much less for their land than they evidently believed that it was worth, and the insurance company will be required to accept the land at a price far in excess of its valuation of the land. A jury's estimate of the value of land based on expert testimony is very uncertain at best. It must of necessity be resorted to at times because there is no other available method, but a method of compensation that is fraught with such uncertainty ought not to be resorted to when there is available another method that would restore the rights of the parties to an exact mathematical certainty. The rights of all parties will be fully protected if the trustee's sale is set aside and the loan company is permitted to foreclose its lien.

The judgment of the trial court in favor of W. A. Roberts is affirmed: The judgment in so far as it awards damages in favor of plaintiffs against the insurance company is reversed, and judgment is here rendered for plaintiffs setting the trustee's sale aside, and in favor of the insurance company against Mrs. Howard for its debt, with interest and attorney's fees, and against both plaintiffs for foreclosure of its lien on the property.