**LEAGUE CITY STATE BANK, Appellant,**

v.

**Robert A. MARES et al., Appellee.**

**No. 91.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

March 27, 1968.

Rehearing Denied April 24, 1968.

Charles R. Hancock, Hancock & Bellard, William E. Carroll, Palmer & Carroll, Dickinson, for appellant.

Ed Schwab, III, Levy, Levy, Schwab & Coughlin, Galveston, Crouch, Cole & Pacetti, Houston, for appellee.

George D. Martin, Crawford, Harris, Martin & Carmona, Galveston, for defendants Holmes et ux.

TUNKS, Chief Justice.

On November 25, 1957, Robert A. Mares and Frank M. Austin, Jr., bought from E. E. Holmes and wife, a tract of real property located in Kemah, Galveston County, Texas. As a part of the consideration for such tract of property, Mares and Austin executed their negotiable promissory note in the principal amount of $12,000.00 dated November 25, 1957, payable in monthly installments of $200.00 each, the first installment of which was due on January 22, 1958 and bearing interest at the rate of 6% per annum. This note was secured by a vendor's lien retained in the deed from Holmes to Mares and Austin and was further secured by a deed of trust of even date therewith.

After taking possession of the property in question, Mares and Austin paid the payments, with some irregularity, on their note. On March 17, 1959, they were in arrears on their payments. On that date, Mares executed and delivered to Holmes a check in the amount of $900.00. On the face of this check a notation is made, "payments on property at Kemah—paid to April 22, 1959." There is no controversy but that this March 17, 1959 payment brought the makers up to date and constituted payment of all due under the note until April 22, 1959.

On March 26, 1959 Mares executed and delivered to Holmes his check in the amount of $1,290.00. Written on the face of that check were the words, "payment on Kemah property, lot 7, block 27." It is in reference to this payment of March 26, 1959, that the testimony is in conflict. Mares and Austin both testified positively that there was an agreement between them on the one hand and Holmes on the other hand to the effect

that the $1,290.00 paid should apply to the next due payments on their note. Holmes, on the other hand, testified that their agreement was to the effect that the check was in payment of the last six $200.00 payments to become due at the end of the note. There is some confusion in his testimony as to the extra $90.00. Holmes testified that it was the result of some computation which he made as to interest, but was never able to explain the manner in which his computation was made. Mares and Austin testified that the sum $1,290.00 was a specific sum required by Holmes at the time in question and that they made the check in that amount as an accommodation to him.

On the date of the original sale, November 25, 1957, Holmes and wife assigned the $12,000.00 note to League City State Bank, League City, Texas. This assignment was effected by endorsement and delivery of the note itself. In a separate written document, assigning the note and deed of trust lien, it was recited that the assignment was in consideration of a loan made to them by League City State Bank in the amount of $4,500.00. Holmes testified that he had participated in a continuous series of loan transactions with League City State Bank and that the additional $4,500.00 loaned to him on November 25, 1957, increased his total indebtedness to that bank to the sum of $10,800.00. The nature of this additional indebtedness is not clear from the record, nor is it clear whether the assignment of the $12,000.00 note was intended to be security for the entire $10,800.00 of indebtedness or the $4,500.00 additional loaned to him on November 25, 1957. It is clear, however, from the testimony of all parties involved, that the assignment from Holmes to the League City State Bank was collateral in nature and was intended as security for Holmes' indebtedness to the bank. Mares and Austin were not notified of this assignment and they made payments directly to Holmes, except for three payments which they, at Holmes' direction, paid to the bank for credit to Holmes' account.

On August 5, 1959, D. C. Long, an attorney in League City, Texas, wrote to Robert A. Mares and Frank M. Austin, Jr., a letter informing them for the first time that their note and the lien securing it had been assigned to the League City State Bank, that they were delinquent in the payment of said note for a period of several months, that the bank had exercised its option to accelerate and did thereby declare the entire balance of the note due and payable as of that date. On September 8, 1959, Long wrote another letter to Robert A. Mares referring to the bank's acceleration of the note and telling him that he, Long, had been instructed to foreclose the deed of trust lien securing the note unless action was taken within five days from the date thereof.

Mares and Austin testified that upon receiving this correspondence from Long, they protested that they were not in arrears on their payments and declared a willingness to maintain the payments as they came due. If their version of the agreement with Holmes as to the application of the $1,290.00 payment of March 26th was true, they, obviously were not in arrears. In response to this declaration on their part, Long insisted that the entire balance of the note, together with attorney's fees, be paid, and declined to accept their offer to continue the payments as they came due. Mares and Austin further testified that, though they made efforts to do so, they were unable to raise the cash with which to pay the entire balance due on the note together with attorney's fees as demanded by Long.

On November 3, 1959, Long, acting as substitute trustee under the deed of trust, foreclosed the lien and executed a trustee's deed conveying the property to Holmes for a recited consideration of $3,891.19.

Holmes had been using the payments on the note from Mares and Austin to meet the payments on his, Holmes' indebtedness to League City State Bank. Between the date of the $1,290.00 payment of March 26, 1959, and the date of the first letter from Long to Mares and Austin of August 5, 1959, Holmes had fallen in arrears on his payments to the bank. The testimony is somewhat in dispute as to just what steps the bank took in order to collect its indebtedness from Holmes. Holmes testified that the bank returned to him the $12,000.00 note. Long testified that Holmes employed him to foreclose the lien and in connection therewith, Holmes delivered to him the $12,000.00 note. Cecil A. Deese, who was at the time in question the executive vice president of League City State Bank, was called as a witness by Mares and Austin. After having testified that Holmes was in arrears in his payments to the bank, he gave the following testimony:

"Question: Well, when Mr. Holmes didn't pay his note, what did the bank do?

"Answer: We told him we wanted our money and he told me that he would get the money up under foreclosure of the property.

"Question: Who owned the note or held the note in the sum of $12,000.00 that had been assigned to the bank as security when he told you all of this?

"Answer: The bank held the note in its possession under this collateral assignment.

"Question: Let me show you the note, also, if I can find it.

"Mr. Bell: Somehow or another, that note didn't get marked—I have it—as an exhibit.

"Question: The bank held the note at that time?

"Answer: That's right.

"Question: And, of course, you can see here (indicating paper), it had been endorsed over to the League City State Bank with full recourse on us by Mr. and Mrs. Holmes?

(The witness did not reply).

"Question: And then Mr. Holmes said he would get the money by foreclosing the deed of trust?

"Answer: That's correct.

"Question: And then what did the bank do?

"Answer: We told him to go ahead and get us the money. That's all we were interested in, was money.

"Question: Did you give him collateral back and this note?

"Answer: I don't recall whether we gave it back to him or not at the time. We wouldn't have given it to him until he paid us our money.

"Question: Because that was the collateral for your loan and you wouldn't redeliver the collateral until you had been paid; is that correct?

"Answer: That's ordinary course of business."

After the foreclosure, D. C. Long took possession of the property in question and refused to let the plaintiffs enter for the purpose of recovering certain items of personal property they had left in the building.

On September 8, 1961, Mares and Austin, as plaintiffs, filed suit against E. E. Holmes and wife, League City State Bank, and D. C. Long. In their petition, the plaintiffs alleged a cause of action in trespass to try title and, alternatively, sought the recovery of damages for the wrongful foreclosure of the lien upon the property in question. In July, 1966, the case proceeded to trial. At the close of the testimony, the plaintiffs dismissed as to D. C. Long.

The case was tried before a jury to whom the trial court submitted special issues. In response to those special issues the jury found: (1) that the plaintiffs and Holmes agreed that the $1,290.00 check dated March 26, 1959, would be credited against the next installments of the $12,000.00 note; (2) that

D. C. Long, in preparing an instrument signed by Holmes designating him, Long, as substitute trustee under the deed of trust, was acting as attorney for League City State Bank; (3) that at the time, D. C. Long demanded of the plaintiffs that they pay the entire balance due on the note, League City State Bank was the holder of that note; (4) that Holmes and his wife were not holders of the note at the time it was accelerated by D. C. Long; (5) that the bank had delivered the plaintiffs' note to Holmes before September 10, 1959; (6) that the bank, in delivering the note to Holmes, did not intend to relinquish title to it; (7) that Holmes, when the plaintiff's requested permission to remove personal property from the premises in question, refused to allow them to do so; (8) that at the time Long notified the plaintiffs that the payments on the note had been accelerated, both Holmes and League City State Bank were claiming an interest in the proceeds of plaintiffs' note; (9) that Holmes and League City State Bank were acting together in the transactions by which the deed of trust was foreclosed and the property sold by trustee's deed; (10) that on the date of the trustee's sale, the property in question had a market value of $20,500.00. Other findings are not considered material to this opinion. On the basis of those findings, together with the parties' stipulation as to the amount which had been paid on the note, the trial court rendered judgment jointly and severally against the defendants, Holmes and wife, and League City State Bank in the sum of $11,350.00. League City State Bank made motion for new trial which was overruled, and has perfected its appeal. Holmes and wife have not appealed.

■ The appellant attacks each of the above listed jury findings by "no evidence" and "insufficiency of the evidence" points of error. We are of the opinion, and so hold, that the testimony and evidence above outlined, together with the testimony of Holmes, himself, that the property in question had a market value of $20,500.00 is

sufficient to support each of the jury's findings. Those points of error relating to lack of evidence to support the verdict are overruled.

Before the trial court rendered judgment for the plaintiffs against the defendants, the defendant, League City State Bank, filed a motion it designated "motion for judgment" in which the recitation was made, in substance, that the jury's answers to the special issues furnish no basis for liability against it. Alternatively, the bank made a motion for judgment notwithstanding the verdict or to disregard certain jury findings. This motion was overruled and the appellant, by point of error, contends that the trial court erred in doing so.

The recitation of the grounds of the motion in question is not entirely clear. Most of those recitations are based on the proposition that there was no evidence to support the jury's findings which the movant sought to have the trial court disregard. Insofar as those alleged errors of the trial court were incorporated in the motion to disregard or motion for judgment notwithstanding the verdict, and preserved by points of error to this court, what we have already said regarding the "no evidence" and "insufficiency of the evidence" points of error disposes of them. The motion further, however, states the proposition that the jury's findings, as a matter of law, will not support a judgment against the appellant bank. We deem that matter as properly presented to us for our consideration.

 We hold that the jury's findings, above summarized, are sufficient, in law, to support the judgment rendered by the trial court. It is the essence of the jury's findings, when considered in the light of the uncontroverted evidence, that the appellant, bank, acting in concert with the defendant, Holmes, caused the deed of trust lien to be wrongfully foreclosed on plaintiffs' property. This foreclosure was wrongful, because, under the jury's findings, the appellees, plaintiffs, were current in their payment on the note at the date of the attempted acceleration and foreclosure. The testimony of the defendant, Holmes, further showed that within a few days after this lawsuit was filed, the improvements on the property in question were either destroyed or substantially damaged by Hurricane Carla. Under those circumstances, plaintiffs were entitled to recover damages represented by the difference between the value of the property in question at the date of the foreclosure and the remaining balance due on their indebtedness. Black v. Burd, Tex.Civ.App., 255 S.W.2d 553, err. ref., n. r. e.; John Hancock Mutual Life Ins. Co. v. Howard, Tex.Civ. App., 85 S.W.2d 986, err. ref.

In the trial court, the defendant, bank, offered in evidence an exhibit purporting to be a carbon copy of an instrument by which the bank reassigned the plaintiff's $12,000.00 note to Holmes. This exhibit was offered in support of the bank's contention that it had no interest in the plaintiffs' note, nor the lien securing it, at the date of the foreclosure and, therefore, did not participate in the foreclosure. The trial court sustained the plaintiffs' objection to the exhibit and such ruling was assigned as error.

The trial court permitted the plaintiff to make a bill of exceptions by interrogating the witness, Deese, executive vice president of the bank, out of the presence of the jury. Mr. Deese testified that he executed the original of the exhibit and delivered it to Mr. Cecil Palmer, who was at that time attorney for the defendant, Holmes. The record showed that the attorney, Palmer, was the partner of D. C. Long, the attorney for the defendant bank. Mr. Deese did not know whether he had delivered the note at the time he had delivered the executed assignment. His testimony further indicates that he had delivered the assignment to Palmer to be held by Palmer until the bank had been paid the debt owed to it by Holmes. On the bill Deese testified, as he had earlier testified before the jury, that the bank would not have delivered the note until it

got its money. He did not know the date of the execution of the assignment or its delivery.

During the course of the testimony of the defendant, Holmes, this exhibit was again offered in evidence and the court again sustained the objections to it. Holmes identified the exhibit as resembling an instrument that had been delivered to him. He did not recall when the instrument which he had received was delivered to him, nor whether the note was attached to it at the time. He did not, in fact, know that the exhibit was a copy of the instrument given to him. He did testify, however, that he had delivered to him an instrument which he described as an assignment of the note prior to the foreclosure sale. The instrument which had been delivered to him had been left in his office on the premises in question and had been destroyed by the storm, Carla.

We are of the opinion that the evidence shows, as a matter of law, that the bank at the time of foreclosure had an interest in the plaintiffs' note and the deed of trust securing it, and was a participant in the foreclosure procedure. It is admitted that it was the bank that accelerated the payments under the note and that Long was acting as attorney for the bank in notifying the plaintiffs of such acceleration. It is conclusively shown that Holmes' debt, for which the plaintiffs' note was security, was not paid until after the foreclosure and the payments on it were, in fact, in arrears at the time of the foreclosure. The testimony of Deese, through whom the bank was acting, was to the effect that the bank did not relinquish its interest in its collateral until the Holmes' debt was paid—"We wouldn't have given it to him until he paid us our money." The plaintiffs' note was never indorsed back to Holmes by the bank. The bank admitted, in response to the pretrial request for admission, that it was not until three days after the foreclosure, on November 6, 1959, that it executed a release of the deed of trust lien. Thus, if Deese executed and delivered the original of the assignment to Holmes' attorney before the foreclosure, it must necessarily have been a conditional delivery, to be effective only when Holmes "paid us our money," a condition that was not met until after the foreclosure.

The admissibility of the exhibit was addressed to the discretion of the trial judge, subject to review for abuse of discretion. Dabney v. Keene, Tex.Civ.App., 195 S.W. 2d 682, err. ref., n. r. e.; McCormick & Ray, Texas Law of Evidence, Vol. 2, p. 428, Sec. 1573. We are of the opinion that, under this record, the trial judge did not abuse his discretion in excluding the tendered exhibit. We are also of the opinion that, if it were error to exclude the exhibit, such error would be harmless. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.