Joe C. **FARRELL**, Petitioner,

v.

Cliff G. **HUNT, et ux., Respondents.**

No. C–4736.

Supreme Court of Texas.

June 18, 1986.

Rehearing Denied Sept. 10, 1986.

Mark Cohen, Henry Novak, Austin, for petitioner.

Benjamin Shefman, New Braunfels, E.S. Prashner, Ertel and Prashner, San Antonio, for respondents.

WALLACE, Justice.

Joe C. Farrell sued Cliff and Roberta Hunt, for a wrongful foreclosure under a deed of trust and under Art. 17.50(b)(1) of the TEX. BUS. & COMM. CODE. The trial court rendered judgment for Hunt and the court of appeals affirmed. We affirm the judgment of the court of appeals.

In June of 1974, Farrell purchased 15 acres of land in Blanco County from Hunt. The sale was made through Ja Wahrmund, a real estate agent with whom Hunt had listed the property. The sale price was $12,048.00; $1,248.00 down, the assumption of a note to a previous owner, Kolodzie, in the amount of $8,200.00; and a note to Hunt in the amount of $3,405.58. The sum of the monthly installments was $136.82. Rather than send the monthly payment by separate checks to Kolodzie and Hunt, as required by the notes, Farrell sent one note for $136.82 to Wahrmund. Wahrmund then sent his check to each note holder.

The jury found: (1) Farrell was not in default on the note as of the date of foreclosure; (2) Hunt's conduct was "an unconsionable act or course of action to Joe Farrell's detriment"; (3) the unconscionable act was a producing cause of damage to Joe Farrell; (4) the conduct was committed knowingly; and (5) the market value of the property on July 1, 1980 was $23,665.00.

■ We first must determine if Farrell proved damages for wrongful foreclosure. In a wrongful foreclosure suit the measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness. *League City State Bank v. Mares,* 427 S.W.2d 336, 340 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Black v. Burd,* 255 S.W.2d 553, 556 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.).

■ In Paragraph Nine of his amended petition, Farrell pleaded for "the difference between the market value of the Blanco County property on July 1, 1980, and the amount the plaintiff owed on both the Kolodzie and Hunt notes on that date." Paragraph Ten of the petition stated:

The combined conduct of the aforesaid defendants constitutes an unconscionable course of action committed knowingly by defendants and a producing cause of plaintiff's actual damages *as aforesaid* and plaintiff is entitled to recover from said defendants the statutory measure of damages as provided for in Art. 17.-50(b)(1) of the TEX. BUS. & COMM. CODE. (Emphasis added).

In his opening statement to the jury, Farrell's attorney stated:

... and what we're going to ask you to do is award Mr. Farrell the difference between the price that Mr. Hunt sold that property for after he took it away from Mr. Farrell and the outstanding balance that was due on the property. Money that Mr. Farrell still owed. To award us the difference between those two figures.

The jury was not asked to determine the indebtedness due on the property at the time of foreclosure. *No objection was made by either party to the omission of such issue.* The amount due on the Hunt

note at the time of foreclosure was proven. The market value as found by the jury as of the date of foreclosure is not questioned; however, no mention was ever made of the amount due on the Kolodzie note.

In the trial court, Hunt moved for judgment on the ground that Farrell had not proven damages. The trial court granted that motion. The court of appeals affirmed the trial court judgment on those grounds.

Farrell contends that he proved the amount of indebtedness due on the property as a matter of law. However, there is no evidence of the amount due on the Kolodzie note. He thus failed to prove his common law damages for wrongful foreclosure.

Farrell further urges the court to hold that he is entitled to $23,665.00, trebled, which the jury found to be the market value of the property at the date of foreclosure. He contends that by submitting that issue, he established his damages and it was Hunt's burden to prove the indebtedness. This contention is made on the basis that "the DTPA should be construed to permit the plaintiff to use the easiest measure of damages available at common law designed to arrive at a total loss." Even if we were to use such a test, Farrell still did not prove any damages at common law.

The Deceptive Trade Practices Act is intended to permit the adversely affected plaintiff to recover the greatest amount of "actual damages" alleged and established as caused by the defendant. *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ.App.— Waco 1978, writ ref'd n.r.e.). Actual damages means those recoverable at common law. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980).

Farrell did not prove actual damages according to any theory under common law. Therefore, the court of appeals correctly rendered judgment for Hunt and we affirm that judgment.

KILGARLIN, J., dissents in an opinion in which McGEE and SPEARS, JJ., join.

KILGARLIN, Justice, dissenting.

I respectfully dissent. The Hunts wrongfully foreclosed on a person not in default. Not only do they get to keep all of the payments made to them by Farrell, they get the property, resell it and keep an additional $11,000 in profit from the resale. This is not justice; it is highway robbery. However, it is not simply because the court's opinion flies in the face of equity that I dissent; the opinion does not correctly state the law.

The court is correct when it states that a plaintiff who prevails in a wrongful foreclosure suit is entitled to recover the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness. *League City State Bank v. Mares*, 427 S.W.2d 336, 340 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). However, the court is incorrect when it concludes that Farrell had to prove the amount due on the Kolodzie note.

On August 31, 1974 (not June, 1974) Joe Farrell signed an earnest money agreement to purchase the Blanco County property from Cliff and Roberta Hunt. The agreement provided for a total sales price of $12,048, less a cash down payment of $1,248. On December 1, 1974, Farrell signed a real estate lien note payable to the Hunts for $3,405.58 (Hunt note). This note was secured by a separate deed of trust also signed by Farrell (Hunt deed of trust).

The Hunts' right to foreclose on the Blanco County property arose exclusively from the deed of trust executed by Farrell. The Hunt deed of trust provided:

That in the event of default in the payment of any installment, principal or interest of *the note hereby secured* ... Beneficiary may elect ... to declare the entire principal indebtedness hereby secured with all interest accrued thereon and all other sums hereby secured immediately due and payable, and in the event of default in the payment of said indebtedness when due or declared due, it shall

... be the duty of Trustee ... to enforce this trust; and ... sell the above described and conveyed real property at public auction (emphasis added).

Under the terms of the Hunt note and deed of trust, the Hunts were secured creditors only to the extent of $3,405.58. The remaining debt was an independent, personal obligation of Joe Farrell to the Hunts, and the Hunts preserved no rights in the property. That is to say, if Farrell paid the Hunt note according to its terms, the Hunts would have had no right to foreclose on the property, even if Farrell did not make a single payment on the Kolodzie note. The Hunts would be entitled to sue Farrell to enforce his personal obligation, but they could not foreclose under the deed of trust executed by Farrell.

Only in wrongful foreclosure cases must a plaintiff bear the burden of proving the amount he owes a defendant. In the nearly identical cause of action for conversion of personal property, a defendant must plead and prove the amount of any indebtedness he claims is owed him by the plaintiff. *Southwestern Investment Co. v. Alvarez*, 453 S.W.2d 138 (Tex.1970). Given the harshness of the wrongful foreclosure remedy, it should be strictly and narrowly applied. The cases discussing wrongful foreclosure make clear that the indebtedness a plaintiff must prove is the remaining indebtedness owed on the note secured by the deed of trust. None of the cases cited by the court stands for a different proposition. A plaintiff is not required to prove any and all indebtedness which might exist on a piece of property.

The Hunts' right to foreclose on the Blanco County property existed only because of and to the extent of the Hunt deed of trust. In order to recover damages in his wrongful foreclosure suit, Farrell had to prove the amount of indebtedness he owed under the Hunt note. Farrell did not have the burden of proving the amount of any other indebtedness he owed the Hunts. If the Hunts believed they were entitled to offset any independent indebtedness owed them by Farrell, they had the burden of pleading and proving such offset.

The value of the remaining indebtedness Farrell owed under the Hunt note was indisputably established as $453.98. Farrell was entitled to recover the value of the property as found by the jury, $23,665, less $453.98, the remaining indebtedness secured by the Hunt deed of trust. However, even if Farrell was required to prove the total remaining indebtedness he owed the Hunts, irrespective of the Hunt deed of trust, Farrell certainly is entitled to recover some damages.

In this case, the jury found the market value of the Blanco County property on the date of foreclosure to be $23,665. The earnest money agreement contained in the record recites a total sales price of $12,048, a down payment of $1,248, and monthly payments of $136.82 including 9% interest. At trial no one disputed that this agreement accurately reflected the total amount Farrell agreed to pay for the Blanco County property. Farrell contracted with Hunt for the purchase of the property and agreed to a sales price of $12,048 plus 9% interest. The amount of the underlying Kolodzie note and its interest rate is completely irrelevant.

Farrell has never been and could never be indebted to Hunt for more than $12,048 plus 9% interest. If Farrell introduced absolutely no evidence of any payments to Hunt, he should at least be entitled to recover the value of the property, $23,665, less the original indebtedness of $12,048 plus interest. Surely, Farrell should not be poured out solely because he did not introduce evidence reducing the amount of the indebtedness he owed Hunt and therefore did not prove all he was entitled to recover. That is an absurb result—but it is exactly what the majority holds in this case.

Farrell is the only one who loses by not introducing evidence of payments in order to reduce the undisputed indebtedness of $12,048. Why should he be penalized for allowing the defendant to pay less in damages than he ought? The value of the property was determined by the jury. The

total amount of the original indebtedness is undisputed. At a minimum, Farrell must be entitled to recover the difference in the value of the property less the original indebtedness.

Of course, Farrell did introduce some evidence of payment. First, the record conclusively establishes that Farrell made the required $1,248 down payment. Additionally, Farrell introduced copies of his cancelled checks representing monthly payments on the property between May 1977 and June 1980. These thirty-eight payments totaled $5,201.82. Farrell clearly should be entitled to reduce the original indebtedness by these amounts, even if he cannot conclusively prove the total amount of the payments he has made. Again, Hunt benefits because Farrell did not prove all of the payments he made.

The above payments were undisputed at trial and should certainly be deducted from the original indebtedness. But I would argue that since the jury found Farrell was not in default on any installment payment on the date of foreclosure, the amount of the remaining indebtedness can be calculated exactly. No one disputed that Farrell was to pay $136.82 a month to retire his purchase price debt. The checks Farrell introduced were for $136.89 a month, but that is because, as he testified, he lost track of the $136.82 figure somehow and started paying more.

The record shows that Farrell made his first payment in January 1975. The jury found he was not in default on May 16, 1980. Thus, it can be calculated that Farrell made sixty-five monthly payments of the required $136.82. This amount would represent the total amount Farrell paid on his original indebtedness to the Hunts.

It seems unfair and unnecessary to hold that Farrell should take nothing in this suit because he did not conclusively establish the exact amount of his remaining indebtedness on the property. Farrell's failure to introduce evidence of all of his payments on the Blanco County property simply reduces his recovery. Surely this court should not hold that because Farrell failed

to prove everything that he is entitled to recover, he cannot recover anything.

McGEE and SPEARS, JJ., join in this dissenting opinion.