**BAYLINER MARINE CORPORATION,**
**Appellant,**

v.

**Danny ELDER, Appellee.**

**No. 09–98–495 CV.**

Court of Appeals of Texas,
Beaumont.

July 15, 1999.

Submitted April 22, 1999.

Decided July 15, 1999.

David F. Bragg, Bragg, Chumlea, McQuality & Smithers, Austin, for appellant.

Joe J. Fisher, II, Provost & Umphrey, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

This is an appeal of a judgment rendered on issues decided by a jury. Appellee initially filed his lawsuit under provisions of the Deceptive Trade Practices And Consumer Protection Act [DTPA]. *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–17.63 (Vernon 1987 & Supp. 1999). The facts and circumstances revolved around the purchase of a boat by appellee [Boat

1], subsequent problems with said boat, replacement of the boat with a second boat [Boat 2] by appellant, and problems with the second boat. The jury found that the appellant engaged in false, misleading, or deceptive acts or practices that were a producing cause of damages to appellee with regard to the replacement boat provided by appellant [Question 1]; there was $8,000 difference in the value of the second boat, as it was received, and the value it should have had as it had been represented by appellant [Question 3]; and that appellant knowingly engaged in the false, misleading, or deceptive acts or practices that were the producing cause of appellee's damages [Question 6]. The jury awarded appellee $30,000 in additional damages because appellant's conduct was committed knowingly [Question 7]. Appellant brings forward ten issues for our consideration including several issues complaining of both legally and factually insufficient evidence to sustain the answers to the four questions set out above. We will initially address the sufficiency issues.

In considering a legal sufficiency, or "no evidence" point, we consider only the evidence and reasonable inferences which tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the legal insufficiency challenge fails. *Stafford,* 726 S.W.2d at 16.

In the case of a factual sufficiency challenge, the reviewing court must first examine all of the evidence, *Lofton v. Texas Brine Corporation,* 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Hart v. Berko, Inc.,* 881 S.W.2d 502, 506 (Tex.App.—El Paso 1994, writ denied).

■ In a DTPA case, the plaintiff is entitled to economic (actual) damages. TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1999). The Texas Supreme Court has defined such damages as those recoverable at common law. *Farrell v. Hunt,* 714 S.W.2d 298, 300 (Tex.1986). Under common law, there are two measures of damages for misrepresentation: (1) the "out of pocket" measure, which is the "difference between the value of that which was parted with and the value of that which was received"; and (2) the "benefit of the bargain" measure, which is the difference between the value as represented and the value actually received. The DTPA permits a plaintiff to recover either the "out of pocket" or the "benefit of the bargain" damages, whichever is greater. *W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988); *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984). Appellee's burden of proof in this case was to show the difference between the fair market value of the second boat as delivered and the value of said boat as represented by appellant.

■ In the instant case, appellee introduced into evidence the purchasing agreement between appellee and the boat dealer, Sprad's Boattown. The purchase price for Boat 1 was $45,238.53. Appellant complains that actual damages cannot be determined from the evidence because there was no testimony showing the value of Boat 2 when it was delivered. From the state of the evidence before us, it is clear that after appellant received the complaints from appellee regarding the defects found in Boat 1, appellant ultimately decided to replace Boat 1 with Boat 2 after having presumably corrected the defects in

the design or structure of the particular boat in question, a 2502 Bayliner Trophy.

There is no evidence in the record indicating that appellant ever informed appellee that the original agreement for the purchase of Boat 1 was canceled, annulled, voided, modified, or rescinded. Indeed, all correspondence from appellant to appellee, or his counsel, indicated that any repairs or replacement would be done without cost to appellee. Appellee testified concerning Boat 2 that he was still making payments on the boat. Although evidence in the record indicated that Boat 1 was a 1992 year model while Boat 2 was a 1993 year model, for all intents and purposes, Boat 2 was to be a brand new, properly functioning replacement for Boat 1. There is no evidence that appellee ever stopped making payments based upon the original purchase agreement or ever unilaterally rescinded the contract. We find that, for purposes of determining actual damages, it is reasonable to infer the value of Boat 2, as represented by appellant at the time of delivery, to be identical to the value of Boat 1 at the time of its delivery, $45,238.53.

The fair market value of Boat 2 at the time of its delivery was assessed by appellee's expert, Captain Robert J. Underhill, a marine surveyor and consultant. After surveying the boat on the water and conducting an inspection of Boat 2, Captain Underhill testified that the fair market value of Boat 2 was in actuality $20,000. We realize that appellant appears to place great stock in the fact that the question to Captain Underhill was as to the "*current* market value" of Boat 2, that the trial in which Captain Underhill was testifying occurred in 1998, and delivery of Boat 2 took place in 1993. However, appellee had already testified that following the survey of Boat 2 upon its delivery, and the subsequent discovery of the identical defects in Boat 2 that were present in Boat 1, Boat 2 was taken out only once and thereafter parked behind appellee's house because appellee's wife did not think the boat safe.

We do not find it unreasonable for the jury to have inferred that the boat was reasonably in the same condition when Captain Underhill surveyed it as it was upon delivery. Captain Underhill explicitly stated that his opinion on the actual value of Boat 2 was "based on going over the boat." We find both legally and factually sufficient evidence in the record to support the jury's answer to Question No. 3. Issue one is overruled.

Issue five complains of the lack of both legally and factually sufficient evidence to support the jury's answer to Question No. 1. It is clear from the record before us that appellant marketed the boat in question as one suitable for offshore excursions, including offshore fishing. Indeed, Plaintiff's Exhibit No. 7 is a brochure distributed by appellant which includes the following assertion: "Flagship of the 1992 Trophy fleet, the 2502 is the finest expression yet of what offshore fishing ought to— can— be." We must discount the bit of "puffing" used in the description in recognizing that the boat in question, Boat 2, need not have been the "finest expression" of an offshore fishing boat. Through the testimony of appellee himself, and especially through the testimony of Captain Underhill, appellee supplied both legally and factually sufficient evidence that Boat 2 was basically unseaworthy. Therefore, at the very least, appellant clearly represented that Boat 2 "had or would have characteristics that it did not have" and represented "that the boat was or would be of a particular quality" when appellee's evidence indicated that the boat's quality was so much less that the boat was virtually incapable of performing as represented. Both legally and factually sufficient evidence exists to support the jury's answer to Question No. 1. Issue number five is overruled.

Because the argument contained in appellant's brief under issues six and seven are virtually identical, we will address these issues together. Issue six complains of the sufficiency of the evidence, both

legal and factual, to support the jury's finding that appellant engaged in any false, misleading, or deceptive acts or practices *knowingly*. Issue seven essentially complains of the legal and factual sufficiency of the evidence to sustain the jury's award of additional damages. The term "knowingly" was defined for the jury as follows:

"Knowingly" means actual awareness of the falsity, deception, or unfairness of the conduct in question or actual awareness of the conduct constituting a failure to comply with a warranty. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

The record before us reflects testimony from Ross Robinson, senior service manager for Bayliner. During cross-examination, appellee's trial counsel elicited the following from Mr. Robinson:

Q. [Appellee's Trial Counsel] Now, I just want to make sure that we are clear. The reason you raised the cockpit on the first boat [Boat 1] is because you—all made a decision that needed to be done due to the weight of the new engines; is that correct?

A. [Robinson] Yes.

Q. All right. Now, isn't it true, Mr. Robinson, that you are not aware of any testing or consideration given by Bayliner regarding the larger engines prior to Mr. Elder purchasing the boat; is that correct?

A. That is correct.

. . . .

Q. Isn't it also true that you are not aware of any testing that was done regarding the hull design in relation to the larger engines, correct?

A. That's correct.

. . . .

Q. All right. Now, it's true that you and Bayliner still don't exactly know why that boat lists, correct?

A. Well, correct. We don't know specifically what weight distribution is causing the list.

Q. Now, you talked about marketing a lot in your examination; and one thing we've established in this case is that what the customer sees— when he goes in and buys the boat or is thinking about buying the boat is the brochure. You do recognize that brochure, correct?

A. Yes.

Q. Now, as I understand it, there is nothing in this brochure under the 2502 regarding the new larger engines or that they have not been tested in conjunction with the design of the hull; is that correct?

A. That is correct.

Q. And, in fact, there is nothing in this brochure that the customer looks at before he spends his hard-earned money that, "By the way, this is a brand new model that hasn't been tested that we are putting new engines on," correct?

A. That's correct.

Q. Now, and just while we're on the brochure, there is also nothing in the brochure that says, "Oh, by the way, the boat might sit with a starboard list and might take water in the scuppers if enough people stand on the back corner." Is there anything in the brochure about that?

A. No, there is not.

Q. And for that matter, there is nothing in the brochure about possibly having to raise the deck after you buy this boat, is there?

A. No.

Prior to Robinson's testimony, appellee had William Buck testify. Mr. Buck was employed with Sprad's Boattown for two and one-half years as a mechanic in the service department. He also dealt with warranty situations and would write up service tickets. Mr. Buck testified as to his personal knowledge of the problems appellee experienced with both boats. The following pertinent testimony was elicited from Mr. Buck:

Q. [Appellee's Trial Counsel] Now, would you agree that it was the general understanding that with this boat [Boat 1] that, you know, the reason it was taking on water is that there was a design flaw?

A. [Buck] At that time I figured, yes.

Q. And, in fact, the second boat just didn't farewell [sic] at all, did it?

A. To my knowledge, no.

Q. Now, after Mr. Elder took delivery of the second boat, you know, you were aware, working for Sprad's, that he was having the same problems with the second boat, weren't you?

A. Yes, sir.

Q. All right. And this was shortly after taking delivery; is that correct?

A. Yes, sir.

. . . .

Q. All right. Now, as I understand it and correct me if I'm wrong—— but on the second boat you actually had an opportunity to inspect the second boat and you actually saw water lines inside the boat, the dirty water lines; is that correct?

A. Yes, sir.

Q. So, certainly at some point in time shortly after he got the second boat, if you left shortly thereafter, we know that Mr. Elder brought the boat back and let Sprad's know that he was having problems, correct?

A. Yes, sir.

When asked about whether Boat 2 was just not built for what appellant advertised or marketed it for, Mr. Buck responded:

Well, the boat was actually built for the salt water to go salt water fishing but the design of the boat just would not allow it to do that. It was built and advertised to run salt water but it would not handle it with two engines like it was supposed to.

From all of the evidence set out above, we find both legally and factually sufficient evidence to support the jury's answers to Questions Nos. 6 & 7 that the false, misleading, or deceptive representations by appellant, that was a producing cause of appellee's damages, were made knowingly. The awarding of additional damages under § 17.50(b)(1) was proper. Issues six and seven are overruled.

■ Issue eight essentially complains of the impropriety of the specific amount of additional damages awarded to appellee by the jury. The jury awarded appellee $30,000 in "additional" damages. Based upon the jury's answers to the questions submitted to it, appellee prevailed only on his DTPA cause of action. Section 17.50(b)(1) provides, among other things, that in addition to actual damages, if the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000. *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon Supp. 1994).[1] The proper manner of conducting such calculations was set out in *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 241 (Tex.1985). Under a *Jim Walter Homes* calculation, the maximum amount of *total* damages available for appellee's successful DTPA cause of action was $24,000. Appellee, in his brief, characterizes the $30,000 amount as "exemplary damages." However, because appellee was awarded actual damages solely under his DTPA cause of action, his only avenue for any enhanced damages was through the statutory scheme set out under § 17.50(b)(1). *See also, Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 367 (Tex.1987).

■ Our analysis of issue eight does not end here. The trial court's judgment con-

---

1. The date of the deceptive act or practice determines which version of the DTPA applies. *See La Sara Grain* Co. *v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984). Because the relevant acts in the instant case occurred prior to September 1, 1995, the 1995 amendments to the DTPA do not apply. *See* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20, 1995 Tex. Gen. Laws 2988, 3004.

tains a recital paragraph, which reads as follows:

Additionally, the Jury found the actual damages sustained by Plaintiff amounted to $8,000.00 and the total appropriate exemplary damages were $30,000. Finally, the parties stipulated and agreed to attorneys fees of $10,000.00 in the event the Plaintiff prevailed on any issue.

The judgment then immediately sets out the decretal paragraph, which reads as follows:

It is therefore, ordered by the Court that Plaintiff, Danny Elder, recover from Defendant, Bayliner Marine Corporation, the sum of $48,000.00, which will include actual and exemplary damages, including prejudgment interest in the amount of $19,909.10, with post-judgment interest at the rate of 10% per annum from the date of this judgment until paid, together with all taxable costs of court in the behalf expended.

A clear reading of the decretal paragraph expressly includes the $19,909.10 prejudgment interest in the total award of $48,000. When the $19,909.10 is added to the agreed attorneys fees award of $10,000, the total comes to $29,909.10. Then by subtracting the $29,909.10 amount from the total award stated in the judgment of $48,000, we arrive at the amount the trial court must have awarded as the DTPA-enhanced damages. This amount is $18,090.90. Obviously, $18,090.90 does not exceed the maximum amount of total DTPA damages that appellee was entitled to recover, that being $24,000. While there might appear to be a discrepancy between the judgment's recital and decretal paragraphs set out above, the rule is that a trial court's recitals, which precede the decretal portions of the judgment, do not determine the rights and interests of the parties. See Crider v. Cox, 960 S.W.2d 703, 705 (Tex.App.—Tyler 1997, writ denied). Although proper inclusions, the recitals preceding the decretal portion of a judgment form no part of the judgment

rendered. See Holt Atherton Indus., Inc. v. Heine, 797 S.W.2d 250, 253 (Tex.App.—Corpus Christi 1990), rev'd on other grounds, 835 S.W.2d 80 (Tex.1992); Stevens v. Cain, 735 S.W.2d 694, 695 (Tex.App.—Amarillo 1987, no writ). As stated by the Fort Worth Court of Appeals, "A judgment is something more than the findings of fact, it is the sentence of law pronounced by the court on the facts found." See Ellis v. Mortgage and Trust, Inc., 751 S.W.2d 721, 724 (Tex.App.—Fort Worth 1988, no writ). The recitations preceding the decretal portion of the written instrument do not suffice to complete the rendition of the judgment. Id.

In the instant case, appellee has filed no cross-point of error complaining of any deficiency in the total amount awarded to him in the decretal portion of the judgment. We therefore find that the amount of additional damages contained within the total sum of $48,000 awarded to appellee is not excessive. Issue eight is overruled.

■ We now move to appellate issues two and three which deal with the testimony of Captain Underhill concerning the value of Boat 2. Issue two complains of trial court error in denying the objection to Captain Underhill's testimony that Boat 2 had a value of $20,000 because "his testimony dealt only with the value of the boat at the time of trial and not at the time of delivery." In our examination of the record, appellant's formal objection to Captain Underhill's opinion as to the boat's value was presented as follows:

[Appellant's Trial Counsel]: Your Honor, we move that his testimony on value be excluded.

THE COURT: All right and the basis for that is?

[Appellant's Trial Counsel]: He is not properly qualified to give an expert opinion on value because he has not had the requisite experience. He has not done the requisite work that would be required to develop a factual data and

factual basis for that opinion and, therefore, he is not qualified.

THE COURT: Let me see counsel in chambers, please.

### (DISCUSSION OFF RECORD IN CHAMBERS)

THE COURT: That objection is overruled due to the timeliness of it.

■ As is readily apparent, the legal basis for appellant's objection at trial was Captain Underhill's qualifications, not that his testimony dealt with the value of the boat at the time of trial and not when delivered. In order to preserve error for appellate review, the complaint on appeal must be the same as that presented in the trial court. *Rogers v. Stell*, 835 S.W.2d 100, 101 (Tex.1992). Because issue two does not comport with appellant's trial objection, it presents nothing for us to review. Issue two is overruled.

■ Issue three does complain of the lack of "knowledge" or "underlying facts or data" to permit Captain Underhill to testify as to value. However, the record clearly reflects that the parties undertook some type of discussion in chambers with the trial court. When the proceedings reconvened on the record, the trial court overruled appellant's objection based upon "timeliness." Appellee cites *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex.1998), in support of the trial court's ruling. The Court in *Ellis* stated the following as to preservation of error with regard to expert witnesses:

> To preserve a complaint that scientific evidence is unreliable and thus, no evidence, a party must object to the evidence before trial or when the evidence is offered. *See Robinson*, 923 S.W.2d at 557; *see also Havner*, 953 S.W.2d at 713 ("If the expert's scientific testimony is not reliable, it is not evidence.") Without requiring a timely objection to the reliability of the scientific evidence, the offering party is not given an opportunity to cure any defect that may exist, and

will be subject to trial and appeal by ambush. (Citations omitted).

*Id.* In the instant case, we cannot know what discussion went on in chambers. The record indicates that appellant apparently deposed Captain Underhill at some point in time prior to trial. Because of this, the trial court may have felt it was unfair for appellant to object to Captain Underhill's testimony on value at the eleventh hour after apparently not having objected to it well prior to trial. At any rate, we need not engage in speculation on this issue. We find that appellee demonstrated that Captain Underhill possessed "special knowledge" as to the matter upon which he was giving his opinion. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex.1998). As was recently observed in *Kumho Tire Company, Ltd. v. Carmichael*, —— U.S. ——, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999), "The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable." We find no abuse of discretion by the trial court in permitting Captain Underhill to testify as to the value of Boat 2. Issue three is overruled.

■ Issue four complains of trial court error in overruling appellee's objection to the form of Jury Question No. 3 because the question should have been asked about the value of Boat 2 without the engines. A trial court has wide discretion in determining the proper issues and instructions to be submitted to the jury. *Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W.2d 554, 557 (Tex.1972); *Gunn Buick, Inc. v. Rosano*, 907 S.W.2d 628, 632 (Tex. App.—San Antonio 1995, no writ). Broadform submission is encouraged. Rule 277 of the Texas Rules of Civil Procedure provides in pertinent part: "In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions. The

court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277; *see Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986); *Lemos v. Montez,* 680 S.W.2d 798, 801 (Tex.1984). Simplicity in the jury charge must be an overriding concern. *Lemos,* 680 S.W.2d at 801.

"[I]t is error to burden the jury with excess instructions which emphasize extraneous factors to be considered in reaching a verdict." *First Int'l Bank in San Antonio v. Roper Corp.,* 686 S.W.2d 602, 605 (Tex.1985). "A judgment should not be reversed because of the failure to submit other and various phases or different shades of the same question." *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.,* 794 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1990, writ denied); *see* TEX.R. CIV. P. 278. In the instant case, we find no error by the trial court in rejecting appellant's proposed alternative to Question No. 3. It was merely a different shading of Question No. 3 without any substantive difference. The above cited authority holds contrary to appellant's position. Issue four is overruled.

Appellant's final two issues, nine and ten, are summarily overruled as their merit depended upon appellee's not being entitled to actual damages (issue nine) and appellee's not prevailing overall, and therefore not being entitled to attorney's fees (issue ten). As we have decided all appellate issues adversely to appellant, the trial court's judgment is affirmed.

AFFIRMED.