

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00232-CV

_____

WCJ Assets, Ltd., Appellant

V.

US Trinity Bridgeport, LLC, Appellee

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV20-08-579

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

This is an appeal from a final judgment in favor of US Trinity Bridgeport, LLC (UST) against WCJ Assets, LTD (WCJ) that awarded $1,066,352.81 in attorney's fees through trial, plus additional fees in the event of an appeal, but denied all other relief to all parties not expressly granted in the Final Judgment. This case arose from a dispute about WCJ's sale of a ranch to UST. Because WCJ has not complained of the Final Judgment, only interlocutory dispositive orders not merged into the Final Judgment, we will affirm the judgment of the trial court.

## I.     Background

Because we are affirming the trial court's judgment on procedural grounds, we will focus primarily on the pertinent procedural history of the case, addressing the substantive issues as they relate to the procedural history. WCJ sued UST claiming that WCJ and UST entered into a Farm and Ranch Contract (contract) for WCJ to sell its ranch to UST for $4.3 million. WCJ also alleged that these parties executed a Special Provisions Addendum (addendum) that allegedly provided that: (1) WCJ reserved an interest in all gravel, sand, and limestone (minerals) on the ranch to a depth of fifty feet; (2) the addendum granted WCJ the rights of ingress and egress and of reasonable use of the ranch for mining, exploring, testing, operating, developing, and removing the retained minerals from the ranch; (3) the addendum would survive closing and be incorporated into the recorded deed at closing; (4) for a period of ninety days after closing, the parties agreed to work in conjunction with one another

2

to close a contract for the sale of the minerals to a third-party purchaser (mining contract); (5) that any such mining contract would be subject to a reclamation plan that was mutually acceptable; and (6) in the event the parties did not reach a mining contract within the ninety-day period, WCJ had the right to enter into an alternative mining contract with a third-party purchaser (alternative mining contract), subject to UST's right of first refusal, and should WCJ enter into an alternative mining contract, it must include a reclamation plan that complies with common industry standards. After the sale was closed, UST allegedly refused to allow WCJ to build and operate a crushing and screening plant on the property to process the minerals it proposed to mine and allegedly refused to comply with its other obligations under the contract.

WCJ sought declaratory relief from the trial court. Specifically, WCJ requested that the trial court grant declaratory judgment that the provisions of the contract, addendum, and deed, and Texas law, allow WCJ to utilize the ranch to develop the minerals from the property and, more specifically, the right to operate a crushing and screening plant on the property to process the extracted minerals. WCJ also requested the trial court to declare such other matters as are necessary to fully and finally determine the respective rights of the parties and to otherwise construe the legal relations, if any, between them and sought recovery of its attorney's fees pursuant to the Declaratory Judgment Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

WCJ's live pleading before the filing of UST's Traditional Motion for Summary Judgment was its Second Amended Petition. There, in addition to the allegations of

3

the Original Petition, WCJ asserted that UST had breached the deed and addendum by failing to cooperate with WCJ to secure a mining contract as outlined in the addendum and sought damages for such breach.[1] On February 28, 2022, UST filed its Traditional Motion for Summary Judgment (contract summary judgment). It challenged WCJ's claims for declaratory relief contending that WCJ had no contractual right to operate a crushing and screening plant on the ranch, and it challenged WCJ's breach of contract claim because UST did not fail to cooperate with WCJ to secure a mining contract or, alternatively, that WCJ suffered no damages from a breach because it could enter into its own mining agreement if the two of them did not mutually agree on a plan within the ninety-day period. The relief sought in UST's motion was for dismissal of WCJ's claims. On January 24, 2023, the trial court signed an "Order Granting [UST's] Traditional Motion for Summary Judgment," which "granted" the motion but contained no decretal language disposing of the claims for relief.

On February 9, 2023, UST filed its Traditional and No-Evidence Motion for Summary Judgment directed at the fraudulent inducement claims contained in WCJ's

---

[1]By the time that the trial court signed its order "granting" this Traditional Motion for Summary Judgment, WCJ had filed its Third and Fourth Amended Petitions, which added fraudulent inducement claims as alternative claims to its breach of contract claims.

Fourth Amended Petition (fraudulent inducement summary judgment).[2] The relief sought in this summary judgment was for the trial court to "grant summary judgment in favor of [UST] on [WCJ's] claim for fraudulent inducement." On March 2, 2023, the trial court signed an "Order Granting [UST's] Traditional and No-Evidence Motion for Summary Judgment," which "granted" the motion but contained no decretal language disposing of the claims for relief.

On February 10, 2023, WCJ filed its Motion for Partial Summary Judgment. In this motion, WCJ sought summary judgment on its claim of impracticality of performance related to its breach of mining contract claims arising from certain temporary injunction rulings by the trial court during the pendency of the case. On March 8, 2023, the trial court signed an "Order Denying [WCJ's] Motion for Partial Summary Judgment," which "denied" the motion.

On February 22, 2023, UST filed its Motion for Determination of Issues of Law (MDIL) where it asked the trial court, pursuant to Rules 166 and 248 of the

---

[2]On February 9, 2023, WCJ filed its Fifth Amended Petition. In this document, WCJ expanded its claims on the breach of mining contract to address events transpiring during the course of litigation related to its unsuccessful attempts to enter into a mining contract with a third party, and it added claims for impracticality of performance in that contract; recission of the contract; addendum and deed due to fraudulent inducement; and that UST was estopped from preventing WCJ from developing the minerals at an on-site processing facility and, alternatively, that the contract, addendum, and deed were the result of mutual mistake and unilateral mistake.

Texas Rules of Civil Procedure, *see* Tex. R. Civ. P. 166, 248, to summarily determine the following:

a. WCJ's Fifth Amended Petition was an impermissible attempt to avoid the trial court's contract summary judgment ruling;

b. WCJ's Fifth Amended Petition's complaints of impracticality of performance, mutual mistake, and unilateral mistake were barred by the fraudulent inducement summary judgment order and contract summary judgment order and were waived due to non-presentation in response to those summary judgment motions;

c. WCJ's Fifth Amended position on impracticality of performance was an affirmative defense, did not support a request for declaratory judgment, and was not actionable as a matter of law;

d. No mutual mistake existed, and unilateral mistake is not actionable as a matter of law.

The relief sought in the MDIL was for the trial court to "grant this [MDIL] in its entirety." On March 2, 2023, the trial court signed an "Order Granting [UST's] Motion for Determination of Issues of Law," which "granted" the motion but contained no decretal language disposing of the issues or claims for relief.

UST, which had earlier filed a counterclaim for breach of contract, declaratory judgment, and attorney's fees, filed a Notice of Partial Non-Suit on March 15, 2023, nonsuiting its breach of contract claims but reserving its claim for attorney's fees as a prevailing party in a declaratory judgment action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. On March 20, 2023, the trial court signed an "Order of Dismissal Without Prejudice on Partial Non-Suit" with decretal language stating that UST's breach of contract claim "is dismissed without prejudice."

6

On March 24, 2023, UST filed its Application for Attorney's Fees and Costs. On July 28, 2023, the trial court signed an "Order Granting [UST's] Application for Attorneys' Fees" with decretal language stating that UST "shall recover from [WCJ] reasonable and necessary attorneys' fees" and set the amount of fees to be determined by jury trial on October 10, 2023. After a jury determined the amount of fees to be awarded, the trial court signed a "Final Judgment" on May 7, 2024.

The first three paragraphs of the Final Judgment, the recital section, consist of historical recitations by the trial court. It recited that the trial court had "granted" UST's breach of contract summary judgment, but it did not include any decretal language in the paragraph. In the second paragraph, it noted that the trial court had "granted" summary judgment in favor of UST on WCJ's claim for fraudulent inducement, but again there was no decretal language in the paragraph. It also noted that the trial court had "granted" UST's MDIL, "dismissing WCJ's remaining claims." However, the actual order granting that motion had no such language—the trial court was mistaken in its recitation. The trial court made no reference to its prior ruling denying WCJ's Motion for Partial Summary Judgment. The trial court noted that UST had nonsuited its breach of contract claim and that the sole remaining issue in the lawsuit was UST's Application for Attorneys' Fees.

In the second section of the Final Judgment, the decretal section, the trial court "render[ed] judgment" for the amount of the fees found by the jury in the first paragraph. The trial court also "decreed" that the judgment would accrue

7

post-judgment interest at the rate of 8.5% per annum, compounded annually until paid.

The final paragraph of the decretal section of the Final Judgment provided:

*All other relief requested by any party in this case and not expressly granted in this Final Judgment is DENIED. This Final Judgment finally disposes of all parties and all claims and is final and appealable.* All writs and processes necessary or appropriate for the enforcement or collection of this Judgment may issue. [Emphasis added.]

Without filing any post-judgment motions challenging the Final Judgment, WCJ now appeals, raising three issues:

1. Did the trial court err in granting UST's traditional motion for summary judgment on WCJ's claim for declaratory relief?

2. Did the trial court err in granting UST's traditional and no-evidence motion for summary judgment on WCJ's fraud claim?

3. Did the trial court err in granting UST's MDIL?

## II. Applicable Legal Principles

### a. Preservation of error as a pre-requisite to appeal

It is a prerequisite to appeal that the record must show that the complaints on appeal were preserved for appellate review, meaning that they were made to the trial court by a timely request, objection, or motion and that the trial court either ruled on the request, objection, or motion, either expressly or implicitly, or refused to rule and that the complaining party objected to the refusal. Tex. R. App. P. 33.1(a); *Alikhan v. Alikhan*, No. 03-19-00515-CV, 2021 WL 3085844, at *3 (Tex. App.—Austin July 22, 2021, pet. denied) (mem. op.). As stated by the *Alikhan* court,

8

"Important prudential considerations underscore" this rule of preservation, *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003), *making this rule "technical, but not trivial,"* *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 518 (Tex. 2018) (quoting *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014)). "This rule 'conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds,' promotes 'fairness among litigants' by prohibiting them from surprising their opponents on appeal, and furthers 'the goal of accuracy in judicial decision-making' by allowing the parties to 'develop and refine their arguments' and allowing the trial court to 'analyze the questions at issue.'" *Id.* at 510 (quoting *In re B.L.D.*, 113 S.W.3d at 350); *see Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 830 (Tex. 2012) ("Failing to [preserve error] squanders judicial resources, decreases the accuracy of trial court judgments and wastes time the judge, jurors, lawyers, and parties have devoted to the case."). "The core principle underlying error-preservation requirements is that the trial court should be given the opportunity to correct potential errors before the case proceeds on appeal." *Majeed v. Hussain*, No. 03-08-00679-CV, 2010 WL 4137472, at *3 (Tex. App.—Austin Oct. 22, 2010, no pet.) (mem. op.) (citing *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999)). *To protect these important prudential considerations—including those of judicial economy—we may review the record sua sponte for preservation of error.*

2021 WL 3085844, at *3 (emphases added); *see also Osman v. City of Fort Worth*, No. 02-21-00117-CV, 2022 WL 187984, at *5 n.9 (Tex. App—Fort Worth Jan. 20, 2022, pet. denied) (mem. op.) (stating that a court of appeals "*should*" review error preservation on its own motion because important prudential considerations are involved).

Specifically, to preserve error regarding what issues were disposed of by a judgment containing a Mother Hubbard clause, the appealing party must have asked the trial court to correct the erroneous judgment during the trial court's plenary jurisdiction or must have perfected a timely appeal of the issue. *Grotjohn Precise*

9

*Connexiones Int'l, S.A. v. JEM Fin., Inc.*, 12 S.W.3d 859, 875 (Tex. App.—Texarkana 2000, no pet.) (holding that the issue was preserved by motion for new trial); *see also* Tex. R. App. P. 33.1(a); *Inglish v. Union State Bank*, 945 S.W.2d 810, 811 (Tex. 1997) (holding that objections to judgment, which disposed of all of plaintiff's claims when motion for summary judgment was only directed at some, were waived where plaintiff neither challenged this defect in the trial court nor by appeal).

### b. Effect of final judgment on interlocutory orders

Generally, when a trial court signs a final judgment, the trial court's interlocutory orders merge into its final judgment and may be challenged by appealing that judgment. *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020). This is true regardless of whether the interlocutory orders are specifically referred to and recited in the final judgment. *Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972); *Radelow-Gittens Real Prop. Mgmt. v. Pamex Foods*, 735 S.W.2d 558, 560 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). But, if a trial court's final judgment contains provisions for relief that are inconsistent with its prior interlocutory orders, then the final judgment "necessarily replace[s]" the prior interlocutory order, even though the final judgment does not reference the prior order(s) or judgment or expressly state an intention to vacate them. *Strain Fam. Ltd. P'ship v. Martin Water Midstream, LLC,* No. 11-23-00257-CV, 2025 WL 1829558, at *3 (Tex. App.—Eastland July 3, 2025, pet. filed) (mem. op.) (holding that final judgment, which expressly denied all relief not expressly granted or referenced therein

10

and that denied relief against all parties, vacated a prior summary judgment granting appellees' declaratory relief and a partial summary judgment order entered that same day granting additional declaratory relief to appellees); *Kelly v. Tracy*, No. 01-18-00913-CV, 2022 WL 2837335, at \*12 n.8 (Tex. App.—Houston [1st Dist.] July 21, 2022, no pet.) (mem. op.) (holding that the final judgment vacated a prior partial summary judgment order where it did not expressly incorporate the prior summary judgment order and included relief that was inconsistent with the relief ordered in the prior order); *Deep Water Slender Wells, Ltd. v. Shell Int'l Expl. & Prod., Inc.*, 234 S.W.3d 679, 695–96 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that the trial court necessarily vacated its prior summary judgment order granting summary judgment when it signed an inconsistent order in which it dismissed all claims based on a forum-selection clause, a non-merits-based ruling).

### c.     Orders without decretal language adjudicate nothing

An order that merely grants a motion is not a judgment; it adjudicates nothing. *Naaman v. Grider*, 126 S.W.3d 73, 74 (Tex. 2003) (holding that an order that merely grants a motion for new trial but has no decretal language adjudicates nothing). Similarly, an order merely granting a summary judgment motion "is nothing more than [an] indication of the trial court's ruling on the motion itself." *Sunday Canyon Prop. Owners Ass'n, Inc. v. Brorman*, No. 07-23-00195-CV, 2024 WL 851513, at \*2 (Tex. App.—Amarillo Feb. 28, 2024, pet. denied) (mem. op.); *see also Chapman v. Johnson*, No. 07-22-00158-CV, 2023 WL 4487718, at \*1 (Tex. App.—Amarillo July 6, 2023, no

pet.) (mem. op.); *Disco Mach. of Liberal Co. v. Payton*, 900 S.W.2d 71, 74 (Tex. App.—Amarillo 1995, no writ). Such an order lacks the requisite decretal language, without which it adjudicates nothing. *Sunday Canyon*, 2024 WL 851513, at *2; *Shetewy v. Mediation Inst. of N. Tex., LLC (MINT)*, 624 S.W.3d 285, 287 (Tex. App.—Fort Worth 2021, no pet.); *Frausto v. RC Indus. LLC*, 605 S.W.3d 54, 56–57 (Tex. App.—San Antonio 2020, no pet.); *Redwine v. Peckinpaugh*, 535 S.W.3d 44, 48 (Tex. App.—Tyler 2017, no pet.). At its core, a judgment grants or denies relief. *Sunday Canyon*, 2024 WL 851513, at *2. "Decretal language is the language employed to grant or deny that relief." *Shetewy*, 624 S.W.3d at 288.

### d. Effect of "Mother Hubbard" clause in final judgment on unadjudicated interlocutory dispositive motions

"A Mother Hubbard clause generally recites that all relief not expressly granted is denied." *Bandera Elec. Co-op., Inc. v. Gilchrist*, 946 S.W.2d 336, 336 n.1 (Tex. 1997). The *Sunday Canyon* case addresses the impact of a Mother Hubbard clause in a final judgment on unadjudicated motions for summary judgment. 2024 WL 851513, at *3. A restrictive covenant lay at the heart of the dispute between the Sunday Canyon Property Owners Association (Sunday) and the plaintiffs. It prohibited short-term leasing of the homes within the Sunday Canyon gated community. Plaintiffs questioned its validity and sued Sunday, seeking various forms of relief, including a declaration of rights. *Id.* at *1. The plaintiffs filed a motion for partial summary judgment on their claim for declaratory relief that the covenant was unenforceable. *Id.*

12

The trial court signed an order that granted the motion but had no decretal language. *Id.*

> Ultimately, the trial court entered a final judgment that provided,

> This judgment, *together with the Order Granting Partial Summary Judgment,* signed and filed February 8, 2021, in the above-captioned matter, *which is incorporated herein,* comprises the final judgment in this case. All writs and processes for the enforcement of this judgment may issue as necessary. This judgment finally disposes of all parties and claims and is appealable. *All other relief not expressly granted in this judgment is denied.* [Emphases added.]

In holding that the Mother Hubbard language in the last sentence effectively denied the relief that had been sought in the partial summary judgment motion, the *Sunday Canyon* court stated,

> In short, the trial court awarded damages to some plaintiffs and attorney's fees to all of them. So too did it incorporate its February 8 "Order Granting Partial Summary Judgment" into the final decree. Following that, one finds language stating: "[a]ll other relief not expressly granted in this judgment is denied." Perusing the remainder of the document uncovers nothing "expressly" mentioning [the plaintiffs'] request for declaratory relief or "expressly" declaring the amended covenant unenforceable or invalid. *Nor did the incorporation of the partial summary judgment fill the void since, again, it adjudicated nothing.* Consequently, that dispute remaining unadjudicated prior to entry of the final judgment, and the latter saying nothing expressly about declaratory relief, ordering that "all other relief not expressly granted . . . is denied" *effectively denied Brorman's request to declare the amended covenant invalid.*

*Id.* at *3 (emphases added); *see also Philips v. McNease,* 467 S.W.3d 688, 694 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that where a final judgment recited that the trial court heard but failed to take express action on a defendant's plea

13

to the jurisdiction, the Mother Hubbard clause in the final judgment overruled the plea).

Thus, pre-judgment dispositive motions, which have orders granting them but without including decretal language, are denied where the final judgment has a Mother Hubbard clause denying all relief not expressly granted in the final judgment.

### e. A party is not entitled to relief on appeal where it has not been adversely affected by the judgment from which it appeals

As held by the court in *Sunday Canyon*,

> The trial court's partial summary judgment adjudicated nothing. That left the claims for declaratory relief pending for disposition and ultimate denial when the trial court ordered, through the final judgment, that claims not expressly granted in that decree were denied. *That being so, we need not address the actual substance of Sunday's first issue; it was not the victim of adverse declaratory relief. Nor need we address issue two; its substance is relevant only if the trial court actually declared the amended deed restriction unenforceable.*

2024 WL 851513, at *4 (emphasis added); *see also Tex. Soc. v. Fort Bend Chapter*, 590 S.W.2d 156, 160 (Tex. App.—Texarkana 1979, writ ref'd n.r.e.) (holding that party not adversely affected by trial court's judgment is not entitled to relief on appeal).

## III. Analysis

### a. Why WCJ was not adversely affected and is not entitled to relief on appeal

> For want of a nail or the devil's in the details. The absence of certain details within the partial summary judgment order coupled with the final judgment's Mother Hubbard Clause leads us to the conclusion reached here.

14

*Sunday Canyon*, 2024 WL 851513, at *1.

The Mother Hubbard clause in this Final Judgment reads,

All other relief requested by any party in this case and not expressly granted in this Final Judgment is DENIED. This Final Judgment finally disposes of all parties and all claims and is final and appealable.

As is apparent from the WCJ's Issues Presented, it believes it was adversely affected by the trial court having "granted" UST's two summary judgment motions and MDIL. We disagree.

First, while the court signed interlocutory orders "granting" those motions, the orders contained no decretal language. Therefore, those motions remained unadjudicated prior to the signing of the Final Judgment. *Id.* at *3.

Second, the Final Judgment did not expressly dispose of those three motions. We cannot ignore the plain language of this Mother Hubbard clause, which denies all other relief not expressly granted. *Id.* "[I]t effectively replaced and vacated those prior orders and in turn denied all relief that was requested by all parties." *Strain Fam. Ltd. P'ship*, 2025 WL 1829558 at *4. Mentioning the granting of the motions in the recitals in the Final Judgment was ineffective. *Id.*; *see also Moseley v. Gandee*, No. 02-18-00123-CV, 2018 WL 3060335, at *2 (Tex. App.—Fort Worth June 21, 2018, no pet.) (mem. op.) (holding that the factual recitations or reasons preceding the

decretal portion of a judgment form no part of the judgment itself).[3] Further, because the Mother Hubbard language acted to deny the relief sought in the motions, it was inconsistent with having "granted" the motions so that the prior interlocutory orders were vacated and not merged into the Final Judgment. *Strain Fam. Ltd. P'ship*, 2025 WL 1829558, at *3; *Sunday Canyon*, 2024 WL 851513, at *3–4; *Kelly*, 2022 WL 2837335, at *12 n.8; *Philips*, 467 S.W.3d at 694 (holding that where final judgment recited that trial court considered plea to the jurisdiction but did not expressly recite taking judicial action on it, it was implicitly denied by the judgment's Mother Hubbard clause); *Deep Water*, 234 S.W.3d at 695–96. Because WCJ was not adversely affected by the Final Judgment in the form of having granted UST's motions for summary judgment and MDIL, which are the issues presented on appeal, WCJ is not entitled to relief on appeal on its issues presented. *Sunday Canyon*, 2024 WL 851513, at *4.[4] It was the final judgment's Mother Hubbard clause, which

---

[3]As set forth above, it is apparent that the trial court was aware of the concept of including decretal language in interlocutory orders, using it in some, but not all, of the dispositive motion orders it signed.

[4]The Mother Hubbard clause in the Final Judgment denied WCJ's claims for relief generally, but WCJ did not present that complaint to the trial court and has not raised any error in the Final Judgment arising from such in this court. As a result, WCJ has not preserved or presented any such error for our review, which we raise sua sponte. *Osman*, 2022 WL 187984, at *5 n.9; *see also Echartea v. Flores*, 691 S.W.3d 774, 778–79 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) (holding that alleged error of court in signing overly broad dismissal order was not preserved where no objection was made in the trial court); *Grotjohn Precise Connexiones Int'l, S.A.*, 12 S.W.3d at 875 (holding that alleged error in claims subject to Mother Hubbard clause must be brought to the attention of the trial court during period of the trial court's plenary

denied relief to all parties not expressly granted in the Final Judgment, that adversely affected WCJ, but WCJ does not complain about the Mother Hubbard clause on appeal.

### b. WCJ's arguments to the contrary and why they are not persuasive

#### 1. Courts should not deny review on the merits due to procedural defects.

WCJ invokes the general principle that

> [c]ourts "should hesitate to resolve cases based on procedural defects and instead endeavor to resolve cases on the merits." *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020). Thus, "[w]henever possible, we reject form-over-substance requirements that favor procedural machinations over reaching the merits of a case." *Dudley Constr., Ltd. v. Act Pipe & Supply, Inc.*, 545 S.W.3d 532, 538 (Tex. 2018).

*Bertucci v. Watkins*, 709 S.W.3d 534, 541–42 (Tex. 2025); *see also Eaglin v. Purcell*, No. 02-20-00199-CV, 2021 WL 126595, at *4 (Tex. App.—Fort Worth Jan. 14, 2021, pet. denied) (mem. op.) (citing *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 215 (Tex. 2020)). WCJ also quotes from *Bertucci*:

> *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017) ("We generally hesitate to turn away claims based on waiver or failure to preserve the issue."); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 282 (Tex. 1994) ("The Rules of Appellate Procedure . . . should not be read to defeat the right to appeal except

---

jurisdiction or made the subject of appeal to be preserved for appellate review); *In re Thompson*, 991 S.W.2d 527, 530 (Tex. App.—Beaumont 1999, no pet.) (holding that failure of defendant to appeal from judgment against him or to file any post-judgment motion precluded his subsequent challenge of discrepancy between recital and decretal language in the judgment).

when such a construction is absolutely necessary."); *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible." (quoting *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008)).

709 S.W.3d at 542 n.8.

We have no quarrel with these principles. However, other fundamental principles are also involved. "It is a fundamental principle of appellate review that a party on appeal may not complain of errors that do not injuriously affect him or that merely affect the rights of others." *Cnty. of El Paso v. Ortega*, 847 S.W.2d 436, 441 (Tex. App.—El Paso 1993, no pet.) (first citing *Buckholts ISD v. Glaser*, 632 S.W.2d 146 (Tex. 1982); and then citing *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973)). Likewise, as noted above, preservation of error for appellate review, although technical, is not trivial and involves important prudential concerns.

> **2. WCJ contends that this court's opinion in *Henry v. Smith* dictates that the trial court's Final Judgment granted UST's two summary judgment motions and MDIL, merging them into the Final Judgment.**

WCJ argues that this court's opinion in *Henry v. Smith* is controlling precedent on the issue of whether the Mother Hubard clause in the Final Judgment in this case granted UST's two summary judgment motions and the MDIL. 637 S.W.3d 226, 233 (Tex. App.—Fort Worth 2021, pet. denied). *Henry* involved a suit by surface owners against the mineral lessees seeking damages to the surface estate and permanent injunctive relief. *Id.* at 229. The surface owners alleged a claim for breach of contract for violating surface covenants in the mineral leases, as well as claims of

18

negligence, nuisance, and trespass. *Id.* The lessees moved for partial summary judgment on the breach of contract claim, which the trial court "granted," but no decretal language was included in the order granting the lessees' motion. *Id.* at 232.

The case proceeded to a trial on the merits with the jury finding in favor of the surface owners on their negligence, nuisance, and trespass claims. *Id.* at 229. The trial court entered judgment on the jury's verdict, awarded the surface owners nominal damages for trespass and minimal actual damages for negligence, incorporated its prior summary judgment ruling on the contract claim (again without decretal language), and denied permanent injunctive relief. *Id.* The final judgment did have a Mother Hubbard clause that provided that "all other relief not granted herein is denied." *Id.* at 233.

In footnote 2, directed expressly at the issue of finality and appealability of the final judgment, we noted that

> [o]rdinarily, an order that grants a motion but that has no decretal language grants no relief and is not appealable. *Shetewy . . .* , 624 S.W.3d [at] 288 . . . ; *In re Wilmington Tr., Nat'l Ass'n,* 524 S.W.3d 790, 792 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). However, because the "Final Judgment" contained the Mother Hubbard language, *we conclude that the trial court intended to deny Surface Owners relief on their breach of contract claim*, which was the subject of Lessees' Motion for Partial Summary Judgment*, and that the Final Judgment is, in fact, final and appealable.*

*Id.* at 233 n.2 (emphases added). We did not hold that the Mother Hubbard Clause constituted a granting of lessees' "unadjudicated" motion for partial summary

19

judgment. We held that the Mother Hubbard clause operated to deny relief to the surface owners on their breach of contract claim.

This distinction is consistent with the fact that the case had proceeded to a conventional trial on the merits. In cases where Mother Hubbard clauses are used in judgments after a conventional trial on the merits before a judge or jury, the clause indicates "the court's intention to finally dispose of the entire matter, assuming that a separate or bifurcated trial is not ordered." *Wright v. Liming*, 702 S.W.3d 666, 671 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001)). Our statement in *Henry* footnote 2 was a recognition that the case had been tried to a jury in a conventional trial on the merits and, given that the judgment was entered on the jury verdict for the surface owners, that any other relief not granted—like the breach of contract claim—was denied. The summary judgment "order" was not inconsistent with the judgment on the jury verdict and was merged into the final judgment.

A similar situation is found in *Cochran Investments, Inc. v. Chicago Title Insurance Co.*, 550 S.W.3d 196, 201 (Tex. App.—Houston [14th Dist.] 2018) (op. on reh'g), *aff'd on other grounds*, 602 S.W.3d 895 (Tex. 2020). Chicago Title, as subrogee, sued Cochran for breach of (1) the covenant of seisin implied in the special warranty deed that conveyed a duplex and (2) the residential sales contract executed in connection with the duplex's sale, and (3) for money had and received and unjust enrichment. *Id.* at 199, 200. After a bench trial on the merits, the trial court orally announced that the

claim for money had and received was barred by limitations. *Id.* at 200. The final judgment did not expressly address the claims for money had and received and unjust enrichment but did contain a Mother Hubbard clause stating that the judgment "dispose[d] of all claims by and against all parties" and that "[a]ll relief not granted herein [wa]s denied." *Id.* at 201. The *Cochran* court held, "The final judgment's Mother Hubbard clause indicates the trial court's intent to dispose of Chicago Title's claims for money had and received and unjust enrichment without assessing liability against Cochran for these claims." *Id.* at 201, n.2.

By contrast, there is no question in this case about the final and appealable nature of this Final Judgment, which stated, "This Final Judgment finally disposes of all parties and all claims and is final and appealable." Such language makes it final and appealable, even if the judgment may be erroneous. *In re Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021). Moreover, this case was not decided after what would be considered a conventional trial on the merits. Assuming that the two summary judgments and MDIL in this case were dispositive, the case was decided on a series of dispositive motions followed by a jury trial on attorneys' fees, which is not considered a conventional trial on the merits. *Hartford Acc. & Ind. Co. v. Buckland*, 882 S.W.2d 440, 444 (Tex. App.—Dallas 1994, writ denied).

Additionally, *Henry* did not raise or discuss the issue of preservation of error, only finality for jurisdictional purposes. Having a final and appealable judgment does not preclude that the terms of a final judgment may be erroneous but unpreserved.

21

*Echartea* is instructive on this point. 691 S.W.3d at 777–79. Echartea sued Flores in Brazoria County justice court to recover damages from concrete work on his property. *Id.* at 776. The case was transferred to another justice court in Brazoria County, where that court dismissed his claims with prejudice. *Id.* Echartea appealed the dismissal to the statutory county court for a trial de novo and, shortly thereafter, filed an application for writ of certiorari in the county court challenging the justice court judgment. *Id.* at 776–77. Flores filed a motion in opposition to the writ of certiorari application, and when Echartea failed to appear for the hearing on the writ, the county court signed a Dismissal Order on Flores's Motion to Dismiss the Writ of Certiorari, which ordered "this cause . . . dismissed with prejudice." *Id.* Echartea did not object to this finality language in the county court. *Id.*

The first question addressed by the *Echartea* appellate court was that of finality for jurisdictional purposes. *Id.* Because the Dismissal Order dismissed the "cause," it encompassed all of Echartea's claims, not just the application for writ of certiorari. *Id.* at 777–78. The court of appeals held that even though the record did not support a legal basis for that adjudication, the order was still a final judgment that conferred appellate jurisdiction. *Id.* However, despite the appellate court's having jurisdiction of the appeal of the trial court's dismissal order—which reflected no legal basis for the dismissal of the entire case as opposed to just the writ of certiorari—the appellate court held that Echartea failed to preserve his complaint because he failed to object to the error in the order in the trial court. *Id.* at 778–79.

22

Issues regarding the propriety of including the Mother Hubbard clause, objections to the effect of the Mother Hubbard clause, and objections to the judgment denying relief that had arguably been granted in prior summary rulings are required to be raised in the trial court to be preserved for appellate review, and that did not occur in this case. *See Sneddeker v. Vita 10 IV Therapy, LLC*, No. 02-24-00316-CV, 2025 WL 1141878, at *11 (Tex. App.—Fort Worth April 17, 2025, no pet.) (holding that objection to a final judgment that denied relief that had been previously granted in a partial summary judgment order lacking decretal language was not preserved where the issue was not raised in the trial court); *see also Stamos v. Houston ISD*, No. 14-18-00340-CV, 2020 WL 1528047, at *4 (Tex. App.—Houston [14th Dist.] March 31, 2020, no pet.) (mem. op.) (holding that failure to object in the trial court to dismissal with prejudice, versus without prejudice, resulted in a failure to preserve error for appeal); *Grotjohn*, 12 S.W.3d at 875 (holding that party adversely affected by a judgment that contains a Mother Hubbard clause preserves its point on appeal by asking the trial court to correct the error during its plenary jurisdiction or by perfecting a timely appeal of the issue); *Thompson*, 991 S.W.2d at 530–31 (holding that objection to discrepancy in judgment between the amount to be recovered stated in the recitals versus the amount stated in the decretal language was not preserved where it was not brought to the trial court's attention or appealed directly in prior appeal). In

23

this case, WCJ made no objections to the language of the Final Judgment in the trial

court and has not raised any issues regarding such in this appeal.[5]

3.  **WCJ contends that our opinion dismissing a prior interlocutory appeal from a temporary injunction order, which had restrained WCJ from executing a third-party mining lease, is the "law of the case" or res judicata regarding whether the trial court granted UST's contract motion for summary judgment and that UST is judicially estopped from contending otherwise**

Our prior opinion, a temporary injunction appeal, is *WCJ Assets, Ltd. v. US Trinity Bridgeport, LLC*, No. 02-23-00056-CV, 2023 WL 4115398 (Tex. App.—Fort Worth June 22, 2023, no pet.) (mem. op.) (*WCJ 1*). The sole issue for a trial court at a temporary injunction hearing is whether the applicant is entitled to preserve the status quo pending a trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978);

---

[5]WCJ points to arguments it made during the hearing on UST's Traditional Motion for Summary Judgment on March 2, 2023, regarding the lack of decretal language in the order granting that motion as a basis for preservation of error, citing *Webb v. Int'l Trucking Co.*, 909 S.W.2d 220, 232 (Tex. App.—San Antonio, 1995, no pet.). That order, however, is not the source of WCJ's adverse treatment; it was the Final Judgment, whose Mother Hubbard clause denied all relief not expressly granted to all parties in the Final Judgment, that adversely affected WCJ and WCJ made no objections to the Final Judgment, thereby precluding potential reversible error in the granting of the summary judgments and MDIL. *See Anderson v. Jamin*, No. 09-24-00006-CV, 2024 WL 3448744, at *2 (Tex. App.—Beaumont July 18, 2024, no pet.) (mem. op.) (holding that where order of dismissal for want of prosecution occurs after partial summary judgment has been granted to defendant, no complaint on appeal is reversible for plaintiff without plaintiff having challenged order of dismissal); *see also Ibarra v. City of Laredo*, Nos. 04-11-00035-CV, 04-11-00037-CV, 2012 WL 3025709, at *3–4 (Tex. App.—San Antonio July 25, 2012, pet. denied) (mem. op.); *Aguilar v. Maverick Eng'g Co.*, 752 S.W.2d 727, 728 (Tex. App.—Corpus Christi 1998, no writ) (same); *Dickson & Assoc. v. Brady*, 530 S.W.2d 886, 888 (Tex. App.—Houston [1st Dist.] 1975, no pet.) (same).

*Whittier Heights Maint. Ass'n, Inc. v. Colleyville Home Owners' Rights Ass'n, Inc.*, No. 02-10-00351-CV, 2011 WL 2185699, at *1–2 (Tex. App.—Fort Worth June 2, 2011, no pet.) (mem. op.). On appeal, the appellate court does not review the merits of the underlying case; it only determines whether there was an abuse of discretion by the trial court in granting or denying the injunction. *Davis*, 571 S.W.2d at 861; *Whittier Heights*, 2011 WL 2185699, at *2. Further, as we noted in *WCJ 1*,

> The interlocutory appeal of a temporary-injunction order is not a vehicle to preview what an appellate court's ruling will be in an appeal from a judgment on the merits. *Fuentes v. Union de Pasteurizadores de Juarez Sociedad Anonima de Capital Variable*, 527 S.W.3d 492, 498 (Tex. App.—El Paso 2017, no pet.) ("[A] party may not use an appeal of a temporary[-]injunction ruling to get an advance ruling on the merits." (quoting *Babu v. Zeeck*, 478 S.W.3d 852, 855 (Tex. App.—Eastland 2015, no pet.))). *Indeed, whatever legal determinations are made to justify the issuance of a temporary-injunction order do not survive to impact our determination of the merits. Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 637 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

2023 WL 4115398, at *10 (emphasis added). Finally, as we noted in *WCJ 1*, an appellate court has no jurisdiction to review an interlocutory summary judgment order when considering an appeal of a temporary injunction. *Id.* at *13; *Equip. Performance Mgmt., Inc. v. Baker Hughes, Inc.*, No. 14-15-01000-CV, 2017 WL 1540805, at *2 (Tex. App.—Houston [14th Dist.] Apr. 27, 2017, no pet.) (mem. op.) ("No statute authorizes an interlocutory appeal in this case, so this court has jurisdiction over this appeal only if the trial court's summary-judgment order is final.")

In *WCJ 1*, UST moved to dismiss WCJ's appeal of the trial court's modified temporary injunction. 2023 WL 4115398, at *1. In granting the motion to dismiss, we

25

held that the issues involved in the modified temporary injunction order were moot, so we set aside the order and dismissed the appeal. *Id.* at *1, *19. We laid out several reasons why we were granting the motion to dismiss, the pertinent one being that

> [t]he trial court has rendered an interlocutory summary judgment [the contract summary judgment] that moots the question of whether UST made a showing of a probable right of recovery at the temporary-injunction hearing *and makes the legal question now resolved by summary judgment an issue properly resolved in an appeal on the merits.*

*Id.* at *1 (emphasis added). We also stated "that the trial court's summary-judgment ruling *resolves the legal question at issue in the injunction; renders our review of that question in the appeal of the temporary injunction moot; and instead, postures the question for review as an appeal from an eventual final judgment.*" *Id.* at *12 (emphasis added).

We rejected WCJ's argument that because the summary judgment order merely granted UST's contract summary judgment without declaring the rights of the parties that we could not glean its meaning. *Id.* at *17. We held that, for purposes of the interlocutory appeal of the temporary injunction ruling, we could "glean" the court's intent in "granting" the contract summary judgment motion—that WCJ was not entitled to declaratory relief stating that the contract documents permitted the construction of a crushing and screening plant on the property. *Id.* at *16–17. By the same token, we also stated that "*[a]gain, we express no opinion on any question resolved in the trial court's summary-judgment order; that task awaits an appeal on the merits.*" *Id.* at *17 (emphasis added).

26

The "law of the case" doctrine is the principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). The doctrine only applies to questions of law, not questions of fact. *Id.* Likewise, "the doctrine does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved on the first trial." *Id.* Finally, findings concerning both the facts and the law related to a probable right of recovery in a temporary injunction setting do not become the law of the case. *WCJ 1*, 2023 WL 4115398 at *10; *Hyde v. Ray*, No. 2-03-339-CV, 2004 WL 1277869, at *3 (Tex. App.—Fort Worth June 10, 2004, no pet.) (mem. op.).

We reject WCJ's argument on the law of the case for three reasons. First, as noted above, this court did not, and could not, pass on the propriety of the trial court's "granting" of UST's contract summary judgment, which we noted in our opinion was a matter to be addressed by a final judgment and appeal. *See Hallmark v. Hand*, 885 S.W.2d 471, 475–76 (Tex. App.—El Paso 1994, writ denied) (where appellate court in first appeal did not make legal findings but only factual sufficiency findings, court in subsequent appeal would not apply the law of the case).

Second, the issues in *WCJ 1* and this case are not the same. Our discussion regarding "gleaning" the intent of the trial court's order "granting" UST's contract summary judgment was made to assess the question of mootness of the probable right to recovery question, not whether the trial court had permanently adjudicated

27

the rights of the parties or the effect of a Mother Hubbard clause in a final judgment on unadjudicated dispositive motions. Rulings related to probable right of recovery in a temporary injunction setting do not become the law of the case. *Hyde*, 2004 WL 1277869, at *3.

Third, interlocutory rulings on summary judgment motions are subject to revision or withdrawal by the trial court as long it retains plenary power. *Strain Fam. Ltd. P'ship*, 2025 WL 1829558, at *3. The question before us now is whether the trial court's subsequent Final Judgment terms trumped the orders "granting" the summary judgment motions and MDIL, not whether we can "glean" an intent of an order for purposes of a temporary injunction review. We hold that the issues lack the required similarity for the doctrine of law of the case to be applied. *See Tex. Law Shield, LLP v. Crowley,* No. 14-18-00986-CV, 2020 WL 4873250, at *3 (Tex. App.—Houston [14th Dist.] Aug. 20, 2020, pet. denied) (mem. op.) (holding that ruling in prior class certification appeal was not the law of the case because it did not reach the merits of the plaintiff's claims, which were the subject of the second appeal).

Regarding judicial estoppel, WCJ directs us to the following positions from UST in its *WCJ 1* appellate filings to support its claim of judicial estoppel:

> * "Specifically, the district court ruled as a matter of law that WCJ did not have the right to convey to the proposed lessee the right to build a crushing and screening plant on the Property." Appellee's Motion to Dismiss Appellant's Appeal of Modified Temporary Injunction Order as Moot, at 5, No. 02-23-00056-CV (filed Feb. 28, 2023).

* "Subsequently, the trial court's summary judgment determined as a matter of law that there is no right to a crushing and screening plant on the property." Appellee's Reply Brief in Support of its Motion to Dismiss Appellant's Appeal of Modified Temporary Injunction Order as Moot, at 2–3, No. 02-23-00056-CV (filed Mar. 15, 2023).

* "[T]he trial court necessarily ruled that WCJ did not have the right to operate a crushing and screening plant, nor could WCJ convey such right. . . . [T]he trial court has also decided, independent of the injunction order, that WCJ did not have the right to operate a crushing and screening plant or to convey to Rogers any such right—meaning WCJ must await a final judgment and then successfully appeal the trial court's January 24, 2023 summary-judgment order to conceivably gain any relief in relation to the [third-party mining lease]." Appellee's Supplemental Briefing Pursuant to this Court's May 2, 2023 Order, at 6–7, No. 02-23-00056-CV (filed May 9, 2023).

Judicial estoppel is "a common law doctrine that prevents a party from [asserting] inconsistent positions in litigation." *Fleming v. Wilson*, 694 S.W.3d 186, 191 (Tex. 2024) (quoting *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 117 (Tex. 2018)). These statements do not support the application of the doctrine of judicial estoppel. First, they did not arise in a prior proceeding. *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (holding that allegedly prior inconsistent statements made in a mandamus proceeding associated with the case on appeal were not made in a separate proceeding as required for judicial estoppel); *Patel v. Harris Cnty. Appraisal Dist.*, 434 S.W.3d 803, 814 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding, in an appeal from a tax appraisal review board, that allegedly prior inconsistent statements made before the tax appraisal review board did not qualify for judicial estoppel because they were made as part of the same proceeding).

29

Second, judicial estoppel requires that inconsistent statements from a prior proceeding be made under oath. *Swilley v. McCain*, 374 S.W.2d 871, 875–76 (Tex. 1964); *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956); *Boren Descendants & Royalty Owners v. Fasken Oil & Ranch, Ltd.*, 703 S.W.3d 874, 890 (Tex. App.—Eastland 2024, pet. pending); *Boucher v. Warrior Crane Serv., LLC*, 698 S.W.3d 344, 352 (Tex. App.—Eastland 2024, pet. pending); *Est. of Phillips*, No. 09-21-00284-CV, 2023 WL 6156080, at *6 (Tex. App.—Beaumont Sept. 21, 2023, pet. denied) (mem. op.); *Calton & Assoc., Inc. v. Auguillard on Behalf of IRA*, No. 01-21-00148-CV, 2022 WL 1250565, at *5 (Tex. App.—Houston [1st Dist.] April 28, 2022, no pet.) (mem. op.); *JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 413 (Tex. App.—Fort Worth 2014, no pet.). None of the statements relied upon by WCJ were shown to be made under oath.

Finally, judicial estoppel is not intended "to punish inadvertent omissions or inconsistencies but rather to prevent parties from playing fast and loose with the judicial system for their own benefit." *Boucher*, 698 S.W.3d at 351–52 (quoting *Banta Oilfield Servs., Inc. v. Mewbourne Oil Co.*, 568 S.W.3d 692, 701 (Tex. App.—Texarkana 2018, pet. denied)). In this instance, we, not UST, have raised the issue of error preservation. As a result, there is no appearance of UST playing fast and loose with the judicial system for its benefit or the appearance that this court was misled in either *WCJ 1* or this appeal. *Fleming*, 694 S.W.3d at 191; *Boucher*, 698 S.W.3d at 352.

**4. WCJ contends that the trial court "uttered" decretal-type language on the record**

WCJ relies on *Jones* and *Ball v. Barley Water Group, Inc.*, No. 07-23-00378-CV, 2024 WL 2098148, at *1 (Tex. App.—Amarillo May 9, 2024, pet. denied) (mem. op.), to support its position. From *Jones*, WCJ gleans that no technical formality or particular phraseology is required for decretal language as long as "the *judgment* is expressed in language [that] is significant in common understanding and parlance." 629 S.W.3d at 926 (quoting *Patrick v. Gibbs*, 17 Tex. 275, 278 (1856)) (emphasis added). From *Ball*, WCJ argues that the trial court can "utter" decretal language in a written document (jury charge) signed after "granting" a summary judgment order without decretal language but before the final judgment is signed. 2024 WL 2098148, at *1.

We are not persuaded by WCJ's arguments. Regarding *Jones*, the Supreme Court did not hold that decretal language was unnecessary; it held that the language of the dismissal order in that case sufficed as decretal language. 629 S.W.3d at 923–26 (holding that an order styled "Order Granting Sanctions and Dismissing Case," which granted two motions to dismiss and described its action as a "dismissal" of the pending bill of review, was sufficient to serve as decretal language).

*Jones* requires decretal language in the "judgment" that is "significant in common understanding and parlance." *Id.* at 926. The factual recitations or reasons preceding the decretal portion of a "judgment" form no part of the judgment itself.

31

*Moseley*, 2018 WL 3060335 at *2; *Alcantar v. Okla. Nat'l. Bank*, 47 S.W.3d 815, 823 (Tex. App.—Fort Worth 2001, no pet.) "Mere recitations of fact, reasoning preceding the decretal portion of a judgment, recommendations to the parties, or expressions of the judge's opinion are not the rendition and are no substitute for decretal language." *Shetewy*, 624 S.W.3d at 288; *see also Atlas Survival Shelters, LLC v. Scott*, No. 12-20-00054-CV, 2020 WL 6788714, at *3 (Tex. App.—Tyler Nov. 18, 2020, no pet.) (mem. op.); R*edwine*, 535 S.W.3d at 48–49; *Bayliner Marine Corp. v. Elder*, 994 S.W.2d 439, 445 (Tex. App.—Beaumont 1999, pet. denied). In the present case, it is uncontroverted that the interlocutory orders "granting" UST's two summary judgments and MDIL contained no decretal language. The rendition section of this final judgment that constitutes the "judgment" contained no decretal language addressing those motions, only a Mother Hubbard clause that denied all relief not expressly granted therein. The recitals do not constitute the "judgment" and are no substitute for decretal language. *Redwine*, 535 S.W.3d at 48–49. Further, if there are discrepancies between the judgment's recital and decretal paragraphs, "a trial court's recitals, which precede the decretal portion of the judgment, do not determine the rights and interests of the parties." *Atlas Survival Shelters, LLC*, 2020 WL 6788714, at *3. Rather, the decretal provisions of the judgment control. *Id.*

Likewise*,* WCJ's arguments about the trial court's verbally "uttering" words of decretal language outside the Final Judgment and its reliance on *Ball* are not persuasive. First, "while we respect our sister courts' decisions, we are not bound by

their precedent." *P.C. ex rel. C.C. v. E.C.*, 594 S.W.3d 459, 464 (Tex. App.—Fort Worth 2019, no pet.). Second, assuming *Ball* should be considered, it is distinguishable. *Ball* involved a written jury instruction signed by the trial court that recited the relief (a declaration that the covenant in question was unenforceable) that had been sought in a prior summary judgment whose order merely "granted" the motion for summary judgment in part. 2024 WL 2098148, at *1. The *Ball* court held that by putting that declaration in the jury charge, the trial court had "uttered" decretal language that cured the lack of decretal language in the summary judgment order. *Id.* In the present case, WCJ points to no written "utterances" other than the recitals in the Final Judgment, which are not part of the actual judgment, of the trial court (see above) and verbal statements by the trial court. Verbal statements by a trial court cannot be considered to explain the trial court's written order. *Gilmore v. Rotan*, No. 11-16-00253-CV, 2018 WL 4496232, at *1 (Tex. App.—Eastland Sept. 20, 2018, no pet.) (mem. op.); *Blitz Holdings Corp. v. Grant Thornton, LLP,* No. 01-04-00627-CV, 2008 WL 1971374, at *14 (Tex. App.—Houston [1st Dist.] May 8, 2008, pet. denied) (mem. op. on reh'g*); Richardson v. Johnson & Higgins of Tex., Inc.*, 905 S.W.2d 9, 11 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Because "a judgment must show intrinsically and distinctly, rather than inferentially, that the matters in the record have been determined in favor of one of the litigants or that the rights of the parties in litigation have been adjudicated," *Redwine*, 535 S.W.3d at 48, we hold that verbal statements by the trial court in a civil action are not appropriate to cure the absence of

33

decretal language, which is the very essence of intrinsic and distinct proof of adjudication.

5. **WCJ contends that the substance of its issues and arguments fairly include the denial of its claims by application of the Mother Hubbard clause**

WCJ's arguments are based on the premises that (1) the summary judgment rulings and MDIL were merged into the Final Judgment, so that no separate objections to the Final Judgment are necessary, and (2) the substance of their issues and briefing fairly address the issues of the application of the Mother Hubbard clause. As we have addressed above, the "granting" of the summary judgments and MDIL were not merged into the Final Judgment. Second, based on the authorities cited above, without having challenged the Final Judgment and its Mother Hubbard language, WCJ cannot complain of the trial court's rulings on the summary judgments and MDIL. While WCJ's brief extensively challenges the trial court's purported granting of those motions, it does not challenge the Final Judgment and the terms of the Mother Hubbard clause that, standing unchallenged, was the judgment of the court, which adversely affected WCJ.

## IV. Conclusion

Having held that WCJ has not preserved the alleged errors that it seeks this court to review, we affirm the judgment of the trial court.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  December 23, 2025